505 So.2d 661 (1987)
J. Adrian BOVIS, Appellant,
v.
7-ELEVEN, INC., et al, Appellees.
No. 86-169.
District Court of Appeal of Florida, Fifth District.
April 16, 1987.
*662 Harry W. Lawrence of Lawrence & Landis, P.A., Orlando, and Steven J. Kyle of Bovis, Kyle & Burch, Atlanta, for appellant.
David C. Willis, Jennings L. Hurt III, and Richard S. Womble, of Anderson & Hurt, P.A., Orlando, for appellees.
COWART, Judge.
This case involves construction of a lease provision in which the lessee agreed to carry public liability insurance naming the lessor as an insured.
A written lease provided in relevant parts that the lessor would maintain the foundation, exterior walls, and roof of a leased building; that the lessor would not be liable to third parties, including the lessee's employees, for damages caused by any act, omission, or negligence of the lessee; that the lessee would hold the lessor "harmless from all claims for any such damage"; and that the lessee would carry public liability insurance naming the lessor as one of the insureds.
An employee of the lessee was injured when she slipped and fell in the leased building. The employee recovered workers' compensation and, being barred by workers' compensation immunity from an action against the employer-lessee, sued the lessor alleging that the water on the floor that caused her to slip and fall resulted from the lessor's negligence in maintaining the roof. The lessor filed a third-party action against the lessee alleging that because of the lessee's breach of its agreement to obtain public liability insurance naming lessor as an insured, the lessee was liable to the lessor for any sums for which the lessor might be liable to the employee. The lessee argued 1) that its agreement was only to hold the lessor harmless from any negligence of the lessee; 2) that the agreement to provide public liability insurance was only to insure against the lessee's negligence; 3) that the lessor, not the lessee, had the duty to maintain the roof; 4) that the employee's claim against the lessor related to damages caused by lessor's negligence and not the lessee's negligence; and 5) that because the damages claimed by the employee were not within the lessee's idemnification covenant they were also not within the public liability coverage that the lessee agreed to provide. The trial court accepted this argument and ruled as a matter of law that under the lease provision the lessee owed the lessor no duty to provide public liability insurance covering the liability asserted by the lessee's employee and entered summary judgment for the lessee and against the lessor.
The question in this case must be considered in perspective. An owner of real property is not an insurer of the safety of persons on such property, nor is he subject to strict liability or liable per se for *663 injuries resulting from dangerous conditions on owned property. The crux of a cause of action for premises, liability is not the ownership of the premises, but the failure of the possessor[1] of the premises to use due care (negligence) in permitting licensees[2] and invitees[3] to come, unwarned, to an area where, foreseeably, they may be injured by a dangerous condition which to them is not readily apparent. This is why an owner of a dangerous premises is not liable to trespassers[4] and yet one in possession of a premises with authority to control access thereto, such as a lessee, an independent contractor,[5] or other non-owner possessor, may be liable to invitees and licensees for injuries from dangerous conditions created by the owner, or the possessor, or by others, such as other invitees and licensees.[6] In this case, as in the usual lease arrangement, the lessor had no right to control access by third parties to the leased premises and the lessee had actual possession and the right to control access to the leased premises and the lessee was not the agent of the lessor-owner. Therefore, the lessee and not the lessor (owner) had the continuing legal duty to inspect the *664 premises and, in permitting or denying access to others, to act according to the safety or danger then existing. A lessor (owner) may be liable in tort to the lessee and to third persons for injuries resulting from latent dangerous conditions of which the lessor (owner) knew or should have known and which existed on the leased premises when the lessor (owner) delivered possession of the leased premises to the lessee without appropriate warnings but such liability is not based on the fact that the lessor is owner but on the basis that the owner, as possessor, can be negligent in these particulars just as any other possessor.[7] A lessor (owner) may also be liable contractually to the lessee for damages for breach of a lease provision requiring the lessor to maintain portions of a leased premises. Of course, the lessor (owner) is not liable for injuries caused solely by the lessee's operations and activities on the leased premises. On the other hand, the lessee may not only be liable to third parties for injuries resulting from the lessee's negligent operations and activities on the leased premises but, being in possession and controlling access by licensee and invitee, may also be liable in tort for injuries to third parties caused by a dangerous condition on the leased premises, whether the dangerous condition resulted from the act of the lessee, the act of the lessor (owner), some combination of the acts of both the lessee and the lessor (owner), or the act of a third person. In summary, the duty to protect others from injury resulting from a dangerous condition on a premises does not rest on legal ownership of the dangerous area but on the right to control access by third parties which right usually exists in the one in possession and control of the premises. The possessor (lessee) has the right and the duty to exclude licensees and invitees from an area that is dangerous because of dangerous operations or activities or because of a dangerous premises condition and has the duty to warn third persons of danger.
In a case such as this, whatever duty a lessor (owner) may have under a contractual obligation with the lessee to maintain the premises, when breach of that duty causes a dangerous condition the lessee, as possessor, has an independent duty, founded in tort law, to prevent injury to the lessee's licensees and invitees which duty requires the lessee to issue adequate warnings of the danger, or to prevent licensees and invitees from access to the area of danger or, if necessary, to eliminate the dangerous condition, notwithstanding the contractual duty of maintenance owed the lessee by the lessor (owner). Of course, the parties to a lease may not effectively contract that either or neither of them will not be liable to third parties injured under circumstances where the law affords such third parties a remedy in tort. However, contracting parties may agree that one will indemnify the other for loss from certain risks or they may agree to shift the risk of loss to a liability insurance company.
The relevant portion of the lease provides:
7. That the Lessor shall not be liable to Lessee or to Lessee's employees, patrons or visitors for any damage to person or property caused by any action, omission or negligence of Lessee or any other tenant of said demised premises and Lessee agrees to hold Lessor harmless from all claims for any such damage, except claims arising out of improper maintenance or failure to make needed repairs to the foundation, exterior walls and/or roof of which Lessee has promptly upon discovery notified Lessor. Lessee agrees to carry public liability insurance naming Lessor as one of the insureds having a minimum coverage of $100,000.00 for injuries to one person; $300,000.00 for injuries to more than one person, in one accident, and $5,000.00 property damage, and to furnish the Lessor with a copy of said insurance policy.
The lease provision in question is not a model and, as is not unusual, it does not *665 differentiate between liability to third persons (the "public") arising from the lessee's operations or activities and liability resulting from dangerous conditions on the premises (premises liability). If the first clause in the first sentence of the lease provision is construed to relate only to damages resulting from the lessee's negligent operations or activities, it means nothing because the lessor is not liable for such negligence of the lessee in the first place. Therefore, that clause must be construed to relate both to liability for active negligence (operations and activities) and to liability for passive negligence (premises liability). This construction makes meaningful the second (indemnity) clause in the first sentence, as well as the exception to that clause. In subparagraph 3(d) of the lease, the lessor agreed to maintain the foundation, exterior walls, and roof of the building on the leased premises while the lessee agreed to keep the interior of the building in good repair. However, the exception in the indemnity clause recognizes (1) that the lessee may be liable in tort to third parties for injuries caused by dangerous conditions on the premises resulting from failure of the lessor to maintain the foundation, exterior walls, and roof of the leased premises; and (2) that, as between the contracting parties, the lessee had a duty to notify the lessor as to needed repairs to the foundation, exterior walls, and roof of the building. Under this indemnity clause, the lessee agreed to hold the lessor harmless from (i.e., lessor is entitled to be indemnified by the lessee as to) all claims, including claims arising out of a breach of the lessor's duty to maintain parts of the building, excepting only claims arising out of a breach of the lessor's duty to maintain as to which the lessee has "promptly upon discovery" notified the lessor of needed repairs. Implicitly, of course, the lessor was not entitled to indemnification from the lessee for damages caused by improper maintenance or failure to make needed repairs to the foundation, exterior walls, and roof of the building as to which the lessee had promptly upon discovery notified the lessor.
Likewise, and for the same reasons, the lessee's agreement to carry public liability insurance with the lessor as a named insured cannot be construed to relate only to the lessee's liability for operations and activities on the leased premises, but must also be construed to relate to liability for damages to the public resulting from dangerous conditions on the leased premises because the lessor would not be liable for damages arising solely from the lessee's activities or operations. Therefore, the lessee's argument is not well founded.
Because both the lessee and the lessor have potential liability to third parties for injuries resulting from dangerous conditions on the leased premises, a clause in a lease requiring the lessee to provide public liability insurance must be construed to mean coverage to benefit the lessor by providing protection from liability to the public arising out of dangerous conditions on the leased premises (premises liability) without regard to who or what caused the dangerous condition. The parties obviously foresaw the risk from premises liability and the purpose of the lease provision was to shift the risk of loss from both the lessee and the lessor onto a liability insurer by providing protection from risk of such liability by use of premises liability insurance. For a somewhat analogous situation involving contractors and owners, see Housing Investment Corp. v. Carris, 389 So.2d 689 (Fla. 5th DCA 1980).
The summary judgment for lessee is reversed and the cause remanded with directions to enter a summary judgment for the lessor in accordance with this opinion.
REVERSED AND REMANDED.
ORFINGER, J., concurs.
DAUKSCH, J., concurs in conclusion only.
NOTES
[1] A possessor of land is

(a) a person who is in occupation of the land with intent to control it, or
(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).
Restatement (Second) of Torts at § 328E (1965)
[2] A licensee is one "who enters upon the property of another for his own convenience, pleasure, or benefit." Post v. Lunney, 261 So.2d 146 (Fla. 1972). However, as discussed infra, note 3, "licensees by invitation" have been included in the invitee category. The licensee category still includes uninvited licensees who are those who "choose to come upon the premises solely for their own convenience without invitation either expressed or reasonably implied under the circumstances." Wood v. Camp, 284 So.2d 691 (Fla. 1973). The distinction between the duty owed an uninvited licensee and a trespasser is hazy. See Morris v. Florentes, Inc., 421 So.2d 582 (Fla. 5th DCA 1982).
[3] An invitee is either a public invitee or a business visitor. A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public. A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land. Restatement (Second) of Torts § 332 (1965). In Post v. Lunney, 261 So.2d 146 (Fla. 1972), the supreme court adopted this definition of invitee. Later, in Wood v. Camp, 284 So.2d 691 (Fla. 1973), the court expanded the two categories of invitees to include a third category: "licensees by invitation," being those, including social guests, who are on the property either by express or reasonably implied invitation.
[4] A trespasser is one "who enters the premises of another without license, invitation, or other right, and intrudes for some definite purpose of his own, or at his convenience, or merely as an idler with no apparent purpose, other than perhaps to satisfy his curiosity." Post v. Lunney, 261 So.2d 146, 147 (Fla. 1972). See also Restatement (Second) of Torts § 333 (1965); Prosser & Keeton, The Law of Torts § 58, at 393-95 (1984). This is also the basis for the origin of the rationale for the "fireman's rule," see e.g. Price v. Morgan, 436 So.2d 1116 (Fla. 5th DCA 1983), rev. denied, 447 So.2d 887 (Fla. 1984).
[5] For an analogous legal principle relating to an owner/general contractor's duty to maintain a job site in a reasonably safe condition, see Lewis v. Sims Crane Service, Inc., 498 So.2d 573 (Fla.3d DCA 1986), rev. dismissed, 503 So.2d 327 (Fla. 1987). There, an operator of a hoist brought an action against the owner/general contractor alleging failure to maintain the job site in a reasonably safe condition. The question presented was whether the trial court erred in giving a jury instruction that the owner/general contractor had a duty to maintain the contraction job site in a reasonably safe condition. The district court held that the instruction was proper, reasoning that an owner/general contractor can be held liable for an injury on a construction job site which liability does not necessarily depend upon the owner/general contractor's active participation. In contrast, a "mere owner," being one who is not also the general contractor, must have actively participated to be subject to such liability. As one court put it, "[a]bsent active participation or the dual capacity of owner/general contractor ..., an owner will not normally be held responsible for providing a safe work area when he has turned the control and oversight of the project over to a general contractor." Atlantic Coast Development Corp. v. Napoleon Steel Contractors, Inc., 385 So.2d 676, 679 n. 1 (Fla.3d DCA 1980). See also Conklin v. Cohen, 287 So.2d 56 (Fla. 1973).
[6] See generally Restatement (Second) of Torts § 344 (1965); Prosser & Keeton, The Law of Torts § 61, at 419-28 (1984).
[7] See generally Restatement (Second) of Torts § 358 (1965); Prosser & Keeton, The Law of Torts § 63, at 436 (1984).