577 So.2d 1347 (1990)
Sylvia BRYANT and James W. Bryant, Her Husband, Appellants,
v.
LUCKY STORES, INC., a Foreign Corporation, d/b/a Kash `N' Karry Discount Supermarkets, Appellee.
No. 89-01761.
District Court of Appeal of Florida, Second District.
October 12, 1990.
*1348 G. Larry Sandefer of Kimpton, Burke & White, P.A., Clearwater, for appellants.
John Robert Terry and Jerry B. Blevins of Bradham & Bennett, P.A., St. Petersburg, for appellee.
En Banc.
PATTERSON, Judge.
Appellants challenge a final summary judgment entered in favor of appellee in a negligence action. We reverse.
As Sylvia Bryant was leaving a Kash `N' Karry supermarket, she stepped from the sidewalk onto a raised speed bump in the fire lane in front of the store. She tripped and fell, sustaining injuries to her shoulder. Mrs. Bryant, joined by her husband, James, brought suit against Lucky Stores, Inc., owner of the premises, asserting that the speed bump was not "reasonably visible" to pedestrians and constituted a hazardous condition of which Lucky Stores had a duty to warn.
Lucky Stores moved for summary judgment on the ground that the speed bump was an open and obvious condition of which it had no duty to warn. Attached to the motion were four color photographs depicting the parking lot and the speed bump. The speed bump is constructed of asphalt of the same color as the parking lot, but a darker shade. The speed bumps extend into the fire lane where vehicular traffic is prohibited. The photographs also revealed that the edge of the adjacent sidewalk was painted in bright yellow. In opposition to the motion, the Bryants relied on their depositions and a notarized letter from Tippens, an engineer, wherein he opined that the speed bump was of an "unsafe design." In her deposition, Mrs. Bryant, who is seventy-five years of age, testified that as she stepped from the sidewalk she was looking for oncoming vehicles and did not see the speed bump.
At the hearing on the motion for summary judgment, counsel for Lucky Stores objected to the court's consideration of Tippens' letter as an affidavit, which it clearly is not. The court "noted" the objection but made no ruling on it. Later in the hearing the court referred to the letter as an "affidavit" and commented that in the court's opinion Tippens did not like speed bumps in general. It is apparent that the trial judge did consider the letter in arriving at his determination. He also determined from viewing the photographs that the speed bump was an obvious condition which did not give rise to a duty to warn. The court granted the motion and on June 1, 1989, entered a final judgment for the defendant. This timely appeal followed.
*1349 A party moving for summary judgment in a negligence case must show that there is no negligence or that the sole proximate cause of the injury was the negligence of the plaintiff. To establish that there was no negligence, the movant must demonstrate that there is no duty owed to the plaintiff or that it did not breach a duty which is owed. Cutler v. St. John's United Methodist Church, 489 So.2d 123 (Fla. 1st DCA 1986). Lucky Stores owed a duty to Mrs. Bryant, as a business invitee, to maintain its premises in a reasonable and safe manner. See Luckey v. City of Orlando, 264 So.2d 99 (Fla. 4th DCA 1972) (plaintiff tripped over a door track which extended over the width of the door); Phillips v. Hartford Casualty Ins. Co., 373 So.2d 415 (Fla. 4th DCA 1979) (plaintiff fell from a ramp leading from a grocery store to a parking area); Zambito v. Southland Recreation Enterprises, 383 So.2d 989 (Fla. 2d DCA 1980) (plaintiff fell while stepping down from elevated area in roller skating facility). It is a disputed question of fact as to whether or not the manner in which the speed bump was placed, in relation to the traffic pattern of customers, constituted an unsafe condition. Eachus v. Big Daddy's Lounges, Inc., 380 So.2d 1154 (Fla. 3d DCA 1980).
The fact that the bump was open and visible is not determinative of whether or not Mrs. Bryant's negligence in failing to see the speed bump was the sole cause of her injury. The question is whether she used due care for her own safety, taking into consideration her age and all of the circumstances surrounding the incident. See Isenberg v. Ortona Park Recreational Center, Inc., 160 So.2d 132 (Fla. 1st DCA 1964). The trial judge determined from viewing the photographs that any person would have seen the speed bump. This finding fails to take into consideration all of the relevant factors as to whether or not Mrs. Bryant should have seen it. We have viewed the photographs and conclude that reasonable men can differ on these issues, requiring their resolution by the trier of fact.
Reversed and remanded.
RYDER, DANAHY and LEHAN, JJ., concur.
HALL, J., dissents with opinion in which SCHOONOVER, C.J., SCHEB, FRANK, and THREADGILL, JJ., concur.
ALTENBERND, J., concurs in part and dissents in part with opinion in which PARKER, J., concurs.
HALL, Judge, dissenting.
I must respectfully dissent from the majority decision.
The majority states that "the fact that the bump was open and visible is not determinative of whether or not Mrs. Bryant's negligence in failing to see the speed bump was the sole cause of her injury." I do not believe that this is a correct statement of the law applicable to this case. It is precisely because of the fact that the speed bump was open and visible that Lucky Stores did not breach the duty it owed to Mrs. Bryant:
There is, however, no duty to warn the invitee against "patent" or "obvious" conditions which are not dangerous per se, ... [Citations omitted.] An invitee is under a corresponding duty to exercise reasonable care for his own safety and to observe that which is obvious and may be seen by one exercising such care.
... .
... To constitute a hidden danger it must be hidden from the knowledge as well as from the sight and must be one which could not be discovered by the exercise of reasonable care.
Grall v. Risden, 167 So.2d 610, 613 (Fla. 2d DCA 1964); Aventura Mall Venture v. Olson, 561 So.2d 319 (Fla. 3d DCA 1990).
While I concur with the Third District's opinion in Aventura, the majority opinion directly conflicts with it and that conflict should be certified to the supreme court.
The majority notes that Lucky Stores attached four photographs of the parking lot and speed bump to its motions for summary *1350 judgment. Only two of those photographs, exhibits D and B, respectively, reproduce what one would see approaching and stepping off of the curb where Mrs. Bryant fell. These photographs reveal that there is no question but that the speed bump is clearly visible and obvious to a person exercising the reasonable care for her own safety that is her duty. See Aventura. As the Fifth District stated in Circle K Convenience Stores, Inc. v. Ferguson, 556 So.2d 1207, 1208 (Fla. 5th DCA 1990), "Some conditions are simply so open and obvious, so common and so ordinarily innocuous, that they can be held as a matter of law to not constitute a hidden dangerous condition."
Thus, Lucky Stores successfully met its burden to show the absence of any genuine issue of material fact regarding the open and obvious nature of the speed bump. Holl v. Talcott, 191 So.2d 40, 43 (Fla. 1966). The burden then shifted to the appellants to prove that a genuine issue of material fact did exist with regard to the visibility of the speed bump. Id. However, at the hearing on the motion for summary judgment, the appellants just assumed such an issue existed and argued that Lucky Stores had a duty to warn of the existence of the speed bump. This assumption was also made by Mr. Tippens, the engineer, in his letter filed in response to the motion. Although Mr. Tippens noted that the bump was not painted, he did not address the visibility of the bump or whether it should have been painted.
The majority asserts that a question of fact exists as to whether the placement of the speed bump in relation to customers' traffic patterns constituted an unsafe design. In support of this assertion, the majority cites Eachus, in which the Third District held it to be a question of fact whether a lounge's parking lot constituted a negligent design because a concrete bumper was placed in proximity to a patrons' walkway. Eachus is distinguishable from the instant case because the Third District made no mention of whether the bumper was open and obvious. In addition, the trial judge in the instant case had nothing before him that created a question of fact regarding unsafe design. Mr. Tippens noted in his letter that the speed bump extended into a fire lane where vehicular traffic is prohibited and that the bump was twelve to eighteen inches from the front walk. He then stated, "whether or not the design was such that the slope was comparatively or statistically moderate is, to an engineer, irrelevant  an accident resulted, therefore, it was an unsafe design." This conclusory statement does not create an issue of fact. Mr. Tippens does not state that speed bumps are prohibited in fire lanes or twelve to eighteen inches from front sidewalks. Furthermore, the standard set forth in his conclusion  if an accident occurs the design was unsafe  would prohibit the construction of just about everything.
There existing no genuine issue of material fact but that the speed bump is open and obvious, the trial court properly determined, as a matter of law, that there was no breach of duty by Lucky Stores and did not err in entering a summary judgment in favor of Lucky Stores.
ALTENBERND, Judge, Concurring in part and dissenting in part.
I concur with the majority that this case presents an issue for jury resolution. I agree with the dissent, however, that there is conflict and confusion within the law concerning the duty to warn of conditions which are not latent under the definition of latency established during the rule of contributory negligence. I discuss this issue in some detail because it is entirely possible, in light of the vote in this case, that my understanding or misunderstanding of the issue will determine the outcome for these parties.
Florida courts have repeatedly stated that a landowner owes two duties to an invitee: "(1) to use reasonable care in maintaining the premises in a reasonably safe condition; and (2) to give the invitee warning *1351 of concealed perils which are or should be known to the landowner, and which are unknown to the invitee and cannot be discovered by him through the exercise of due care." Pittman v. Volusia County, 380 So.2d 1192, 1193 (Fla. 5th DCA 1980). See also Maldonado v. Jack M. Berry Grove Corp., 351 So.2d 967, 969-70 (Fla. 1977) (J. Sundberg, dissenting); Hall v. Holland, 47 So.2d 889 (Fla. 1950); Meyer v. Torrey, 452 So.2d 672 (Fla. 2d DCA 1984); Aventura Mall Venture v. Olson, 561 So.2d 319 (Fla. 3d DCA 1990); Cassel v. Price, 396 So.2d 258 (Fla. 1st DCA), review denied, 407 So.2d 1102 (Fla. 1981).
In this case, I agree with the dissent that the duty to maintain the premises has not been breached as a matter of law. Lucky Stores' decision to install this speed bump, as a safety device in a location shared by both pedestrians and motor vehicles, violated no standard of care and should not be second-guessed by a jury. Because this speed bump is not inherently dangerous and does not necessarily create an unreasonable risk to pedestrians, this retailer should be encouraged to use this type of device to protect pedestrians from motor vehicles  which are dangerous instrumentalities. After this speed bump was installed, it was well maintained. This accident was not caused by a pot hole or a condition in need of repair. Thus, the duty to maintain is not the critical issue in this case.
The duty to warn, on the other hand, is a critical and confusing issue in this case. This speed bump creates an uneven surface in an area regularly traveled by pedestrians. At least under older definitions, it is not a latent condition, but rather a patent condition that reasonable people may sometimes overlook because it tends to blend into its surroundings. Mrs. Bryant tripped over this speed bump because she did not notice it. Apparently she was distracted by traffic, by other activities that are common to retail parking lots, or simply by her own daydreams. All of us are sometimes distracted by life and do not see perils, even big perils. The people who run Lucky Stores know this or should know this.
Not all speed bumps are alike. This speed bump is not located in an area which is isolated from pedestrians. This speed bump is adjacent to a slightly elevated sidewalk. It is clearly foreseeable that customers will step off the sidewalk into this area in order to walk to their cars. These customers will include older customers with bad eyesight, customers with shopping bags blocking their view, and customers in a hurry. They will walk in this area at dusk and in inclement weather. Some of them will fall. We know that one of them has sustained injuries.[1] A jury could reasonably decide that the relevant standard of care required of a landowner under these circumstances included a duty to warn of the speed bump by painting the bump with yellow paint, similar to the yellow paint on the nearby curb. A jury could also reasonably conclude that such yellow paint would have prevented this accident, i.e., that the absence of the paint was a proximate cause of the accident.
Although it may be described as an issue of design or engineering, whether Lucky Stores is subject to a standard of care that requires it to paint the speed bump a bright color is an issue relating to the duty to warn  not the duty to maintain.[2] The plaintiff argues that the bright color is *1352 needed to communicate the existence of a potentially dangerous condition that is not in need of repair. The bright paint is intended to focus one's attention on the danger and, thus, eliminate the need to verbally warn of the condition. When a warning can be accomplished through paint or other nonverbal methods, one can attempt to analyze the legal problem as an issue of maintenance. The proposed paint, however, seems to be functional only as a warning in this case.
As the dissent emphasizes, there can be no question that Mrs. Bryant could have seen this speed bump. The weather and lighting conditions would have permitted any attentive person to discover this speed bump. If this case had arisen before Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), the analysis would have been simple. Under the facts of this case, the trial court could probably have determined, as a matter of law, that Mrs. Bryant was contributorily negligent to some degree. Prior to pure comparative negligence, that would have ended the analysis.[3]
The judges of this court appear to be divided as to whether the advent of pure comparative negligence has modified the landlord's duty to warn and has created a duty to warn concerning conditions which are sufficiently visible or obvious that they do not fall within the traditional definition of latent danger.[4] The duty described in Hall was formulated during the days of contributory negligence. See also Ladenson v. Eder, 195 So.2d 211 (Fla. 1967); cf. McNulty v. Hurley, 97 So.2d 185 (Fla. 1957) (duty to invitee includes keeping premises in a reasonably safe condition and guarding against subjecting invitees to foreseeable dangers). If the duty to warn still exists only when the peril "cannot" be discovered by the particular plaintiff through the use of due care, then I have voted incorrectly and this case should be overruled by the supreme court.
I interpret the duty to guard invitees to include a duty to take reasonable steps to warn invitees of a discoverable condition that is dangerous if overlooked when a landowner should reasonably expect that ordinary and reasonable invitees would overlook the condition with such frequency that a prudent person would warn of the danger.[5] If the invitee overlooks such a condition for reasons involving his or her *1353 own negligence, that should be a matter of comparative negligence. This interpretation is based in part upon Judge Hobson's attempt to clarify this "murky area of the law" in Zambito v. Southland Recreation Enterprises, Inc., 383 So.2d 989 (Fla. 2d DCA 1980), and upon other cases which have implicitly or expressly rejected "patent danger" as a complete defense in premises liability cases. Hylazeski v. Wet'N Wild, Inc., 432 So.2d 1371 (Fla. 5th DCA 1983); Metropolitan Dade County v. Yelvington, 392 So.2d 911 (Fla. 3d DCA), review denied, 389 So.2d 1113 (Fla. 1980); Bennett v. Mattison, 382 So.2d 873 (Fla. 1st DCA 1980).
I would note that my reasoning is not consistent with Florida Standard Jury Instruction (Civil) 3.5(f), which was last revised in 1981, and describes a general standard of care which requires a landowner to warn an invitee "of a dangerous condition concerning which the defendant had, or should have had, knowledge greater than that of the claimant." This jury instruction is based only on the duty concerning latent dangers and at least implies that the defendant owes no duty if the plaintiff is fifty percent comparatively negligent.[6] Arguably, this instruction applies modified comparative negligence.
It may be that the advent of comparative negligence has changed or should require a change in the definition of a latent danger. The classic definition of latent danger was stated in Kagan v. Eisenstadt, 98 So.2d 370 (Fla. 3d DCA 1957):
The obligation of the proprietor of the premises is to warn of latent dangers, i.e., those which are not apparent from a casual observation of the premises. The Supreme Court of Florida has continually adhered to the proposition that requires a person to see what is there to be seen by the ordinary use of his senses, and if it is there to be seen, it is deemed, in law, to have been seen... . There is no duty to warn one of visible and obvious hazards.
Id. at 371 (citations omitted). Under this definition, I would concede that this speed bump is not latent and requires no duty to warn.
It may also be that, as part of the general standard of care to maintain or guard, we have developed a duty to warn of "conditions," which are more obvious than "perils." This speed bump is only dangerous or perilous if it is overlooked. It probably is not so dangerous that a reasonable landowner would hire an employee to stand next to it during business hours and warn each passing customer of its existence. It is, however, a "condition" which is sufficiently dangerous that a reasonable jury could decide that it warrants some lesser warning technique. One can reasonably expect a landowner to "guard" invitees against a "condition" by incorporating greater obviousness into the design and construction of the speed bump.
Frequently, Florida's courts have decided that "obviousness" is the key issue and that a jury must determine whether the condition or the peril is obvious. See Levy v. Home Depot, Inc., 518 So.2d 941 (Fla. 3d DCA 1987) (question of obviousness of teninch gap in sidewalk and "concomitant" duty to warn was a jury question). But cf. Prager v. Marks Bros. Co., 483 So.2d 881 (Fla. 3d DCA 1986) (the obviousness of an unfinished flowerbox abutting a sidewalk curb was not a jury question). As a result, the existence of any standard of care to *1354 warn depends on the answer to this issue. Reality, however, does not always cooperate with legal theory and does not neatly divide conditions into two categories, latent and patent. Obviousness, at least as measured in the science of perception, is not a dichotomy but rather a matter of degree. The need to warn and the methods of warnings should also increase as a matter of degree. These are questions of reasonableness which typically should be decided by juries unless there are overriding public policies.
If an invitee's negligence is no longer a complete bar to recovery in a negligence action, and the doctrine of comparative negligence applies where this defense is raised, then it seems virtually impossible to rationally eliminate, rather than reduce, the defendant's standard of care to warn in cases involving comparative negligence. Zambito, 383 So.2d at 991. After the advent of comparative negligence, a "patent" condition should only include conditions that are so obvious that an ordinary and reasonable invitee would overlook the peril with such infrequency that a prudent person would not warn of the danger and, thus, it could be stated fairly that the condition is overlooked by the plaintiff solely due to the plaintiff's negligence. Phillips v. Styers, 388 So.2d 221 (Fla. 2d DCA 1980) (on motion for rehearing).
I would note that I do not believe this clarification would alter the rule in Schoen v. Gilbert, 436 So.2d 75 (Fla. 1983), in which the supreme court held that a step down in a private residence does not require a warning because such a condition is "obvious and not inherently dangerous." Id. at 76. Intuitively, it seems that a step down which might be obvious in a home to the occasional visitor might well be less obvious in a commercial setting with thousands of pedestrians who are unfamiliar with the details of the terrain. The typical step down in a home is so rarely overlooked by a social guest that a prudent person would not warn of the danger. On the other hand, a step down inside a retail store, or a speed bump in a parking lot, may be overlooked with greater frequency. I would allow juries to set the standard of care for such conditions if reasonable people could disagree on the need to warn of the conditions. But see Gomez v. Plasencia, 522 So.2d 423 (Fla. 3d DCA 1988) (relying on Schoen in a commercial setting, i.e., model home, for a fall from a step down).
I am aware of my obligation to obey the controlling precedent from the supreme court. The tension which exists within that precedent, Kagan, Schoen, Hoffman, and Auburn Machine Works, Co. v. Jones, 366 So.2d 1167 (Fla. 1979), frankly makes it difficult to know whether the majority or the dissent has best fulfilled that obligation. A review of this case by the supreme court to decide whether comparative negligence has affected the duty to provide signs or nonverbal warnings of conditions that are not latent under the Kagan definition would lend clarity to this area of the law. I concur in the majority's decision to remand this case for further proceedings in the trial court, but I join the dissent to recognize that the majority's opinion announces a rule conflicting with the rule in Aventura. I would also certify the following question to the supreme court:
DOES A PLAINTIFF'S ABILITY TO DISCOVER A POTENTIALLY DANGEROUS CONDITION REMOVE THE DUTY TO WARN FROM THE LANDOWNER'S GENERAL STANDARD OF CARE, OR DOES THAT ABILITY MERELY REDUCE THE RECOVERY AS AN ISSUE OF COMPARATIVE NEGLIGENCE?
NOTES
[1] This record does not establish whether other customers have fallen in this area.
[2] It is noteworthy that the jury issue in this case is actually an issue which defines the specific standard of care owing by a landowner for a speed bump of this type in such a location. Lucky Stores, as the landowner, does owe Mrs. Bryant, as an invitee, a legal duty which exists by virtue of the landowner/invitee relationship. Although negligence is frequently described as a tort with four elements: duty, breach of duty, causation, and damages, Paterson v. Deeb, 472 So.2d 1210 (Fla. 1st DCA 1985), review denied sub nom., Langston v. Paterson, 484 So.2d 9 (Fla. 1986), more accurate analysis requires a consideration of two additional issues. After one determines that the relationship between the parties warrants a duty of reasonable care, it is necessary to determine the general standard of care and the specific standard of care which apply to the case. W. Keeton, W. Prosser, The Law of Torts § 37 (5th ed. 1984).

The general standard of care is a judicial question. The "duty" owing by a landowner to an invitee, or to a trespasser, or the "duty" owing by a motorist to the public is actually a general standard of care enunciated by the court. The judiciary creates these general standards by a consideration of many public policies.
The specific standard of care is a standard created by applying the general standard in light of the more specific facts of the case. Although the judiciary is often tempted to decide this issue as a matter of law, I agree with the majority that the specific standard of care should be decided by the jury in "all doubtful cases." The Law of Torts § 37 at 237. I do not perceive any authority or overriding public policy which would permit this court to define the specific standard of care to use warning paint on speed bumps in parking lots. As long as reasonable minds could disagree on the nature of that specific standard of care, that policymaking decision should be left to the jury, even if the underlying facts are essentially without conflict. Thus, the only judicial issue in this case is whether the general landowner's standard of care permits or allows this specific standard of care.
[3] Florida is a pure comparative negligence state. A plaintiff who is ninety-nine percent at fault can still recover some damages from a negligent defendant. For a description of pure comparative negligence, modified comparative negligence, and related concepts, see The Law of Torts section 67.
[4] I would note that a more accurate analysis would be expressed in terms of a general standard of care which requires some method of warning to make a potentially dangerous, but visible, condition more apparent. The legal question in this case is whether the reasonable care required of a landowner to an invitee includes such a general standard of care.
[5] This interpretation is consistent with section 343A of the Restatement (Second) of Torts (1965), which provides: "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." See also Casby v. Flint, 520 So.2d 281 (Fla. 1988) (relying on section 343A to determine the dispositive "duty to warn" issue in a step down case); The Law of Torts § 61 at 427.
[6] This concept of duty is interesting because the existence of the duty to warn is dependent on the knowledge of the specific plaintiff rather than upon the expected knowledge of the ordinary reasonable person. It would seem more logical to create a duty, or more accurately a standard of care, which requires an obligation to warn if an ordinary person needs the warning, and then find that a breach of this duty was not the proximate cause, or at least not the sole proximate cause, of a specific plaintiff's injuries because of that specific plaintiff's level of knowledge.