DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

ANTONIO RUIZ and MARIA HERNANDEZ,

Appellants,

v.

WENDY'S TRUCKING, LLC, a Florida Corporation; WENDY MARIE
CABRERA, an individual; REINIER ALONSO LEYVA, an individual;
ROBERTO GARCIA, an individual; J&J HAULING, INC., a Florida
Corporation; and JESUS GARCIA, an individual,

Appellees.

No. 2D21-485

_____

September 23, 2022

Appeal from the Circuit Court for Hillsborough County; Emily A.
Peacock, Judge.

Thomas A. Burns and Shannon C. Reese of Burns, P.A., Tampa;
and Joseph M. Abdallah of Kanner & Pintaluga, P.A., Boca Raton,
for Appellants.

Mark D. Tinker of Cole, Scott & Kissane, P.A., Tampa, for Appellees
Roberto Garcia and Jesus Garcia.

No appearance for remaining Appellees.


MORRIS, Chief Judge.

Antonio Ruiz and Maria Hernandez appeal a final summary judgment entered in favor of appellees Roberto and Jesus Garcia. Ruiz was severely injured while working on a truck owned by a third party, Wendy Marie Cabrera, which was parked on property owned by the Garcias. Ruiz and Hernandez brought a negligence and loss of consortium action against the Garcias as well as other causes of action against other parties who are not part of this appeal. The trial court ultimately granted final summary judgment in favor of the Garcias. For the reasons explained herein, we affirm.

BACKGROUND[1]

The Garcias jointly owned a commercial parking lot in Tampa. The lot contained crushed concrete and was used as a parking lot for large commercial trucks. The Garcias entered into an agreement with a third party, Eglisbel Tito Ginarte, wherein Ginarte was paid a commission to find truck owners to enter into leases for parking spots on a portion of the lot. The lease agreements forbade oil changes or engine work from being performed on the lot, but

_____

[1] The background factual information was gleaned from the various depositions filed in support of the Garcias' motion for summary judgment.

2

they did allow for emergency repairs such as tire or battery changes. However, there was no written lease agreement with Cabrera, whose truck was involved in the accident.

Roberto visited the lot once every month or two to ensure that the people parking in the lot were paying customers. But he maintained that Ginarte was the person who ran the parking operation. Roberto testified that per his instructions, Ginarte installed signs prohibiting mechanical work on the lot before it began to be used as a parking lot though Roberto later acknowledged that he was not 100% sure that it was done. Roberto asserted that he was not aware until January 2016 that people were performing mechanical work on the property.

Ginarte asserted that his only involvement was to find truck owners who wanted to park in the lot and to collect the monthly rent. He would stop by the lot occasionally after work and on Saturdays; this amounted to a few hours of time spent on the lot each week. According to Ginarte, there were no safety rules on the lot and there was no agreement requiring him to enforce the rules on the lot. He was never provided with a checklist of prohibited activities on the lot. However, he testified that there were signs

3

prohibiting mechanical work on the lot and that after the accident, a very big sign was installed at the entrance stating the prohibition. Ginarte told every person who leased a spot that they were not allowed to perform mechanical work in the lot. Ginarte acknowledged that there was no one at the lot to enforce the rule against performing mechanical work. Ginarte also acknowledged that no one was supervising the lot in January 2016 when Ruiz was injured other than a homeless man that Ginarte had permitted to live on the property in exchange for his walking around at night to look for thieves. Ginarte claimed that he became concerned that people were performing mechanical work on the lot and that he asked Roberto to hire someone to supervise the property; he claimed that Roberto refused to do so because he did not want to pay anyone else. Ginarte did clarify, however, that while truck owners came out to the lot to perform minor repairs to their trucks themselves, the mechanics that he saw were performing inspections. If a problem was found, the trucks were towed out of the lot for repairs. He testified that no one ever reported to him that mechanical work was being performed while he was not present on the lot. Ginarte admitted that there were three instances where

4

truck owners attempted to perform mechanical repairs on the lot but he told them to stop and they did.

Cabrera testified that she never discussed with Ginarte whether mechanical work was permitted on the lot and that no one else ever told her about the prohibition. There was other testimony from Cabrera's truck driver and another truck owner, who each relayed that they did not see any signs prohibiting mechanical work and that they observed other mechanics on the lot, though at least one of them conceded that he was unsure whether the mechanics were performing inspections or mechanical work.

Ruiz testified that on January 23, 2016, he came to the lot at Cabrera's request to repair a transmission valve on her truck. Ruiz had performed other work on the truck at the lot about a week before the accident. Ruiz saw other people working on trucks on that day. Ruiz testified he talked to someone whom he believed was a supervisor—presumably the homeless man. Ruiz told him he was there to work on Cabrera's truck, and the man told him that Cabrera was on the way so Ruiz should wait for her. Ruiz testified that no one told him he could not work on Cabrera's truck on the

5

lot. Ruiz also did not see any signs prohibiting mechanical work on the lot.

When Cabrera arrived, Ruiz got underneath the truck to begin working on it. Cabrera was sitting in the cab of the truck. When Ruiz was finished working on the truck, Cabrera's driver started the ignition. Ruiz felt the truck start, but he did not remember anything after that because he lost consciousness when the truck broke loose and ran over him. He suffered numerous fractures in his legs and torso; lacerations on his head, kidney, and abdominal wall; sepsis and septic shock; gastrointestinal hemorrhage; acute kidney failure; respiratory failure; and loss of vision in both of his eyes. His left leg was also amputated.

In Ruiz and Hernandez's third amended complaint, they alleged that the Garcias had a nondelegable duty to maintain their premises in a reasonably safe condition and to prevent unreasonable and dangerous activities from occurring on the lot. They alleged several breaches of that duty relating to failure to prevent mechanical repairs from being performed on the property, failure to train or hire someone qualified to supervise the lot, failure to supervise agents and employees, failure to maintain or make

6

available necessary safety equipment for trucks, failure to provide adequate warnings about the prohibition against mechanical work, failure to maintain an orderly flow of traffic for vehicles, including not having appropriate signage, and permitting a convicted child molester to supervise the lot without adequate safeguards.

The Garcias moved for summary judgment arguing that there was no evidence that they committed any negligence or that the condition of the property caused the accident. They asserted that Ruiz was a licensee on the property and that, therefore, the only duty they owed was to not willfully and wantonly harm him, which they did not do.

Ruiz and Hernandez responded that there was a disputed issue of material fact as to whether the Garcias created a foreseeable zone of risk by permitting mechanical repairs to be performed without proper safety measures in place. They also argued that the Garcias owed them a duty of reasonable care under the ordinary negligence standard because the accident was a result of their own active or passive negligence rather than a defective condition of the lot. They contended that even if the action was

7

analyzed as one involving premises liability, Ruiz was an invitee rather than a licensee.

Ruiz and Hernandez filed an affidavit from an automotive and trucking industry expert. The affidavit contained the expert's opinions as to what safety measures must be utilized in commercial parking lots along with the expert's opinion that Roberto's supervision of the lot was inadequate and inconsistent with industry standards. There was disagreement at the summary judgment hearing about whether the affidavit should be considered, and the trial court stated it would not consider it because it was not "record evidence in the case." Although Ruiz and Hernandez challenged the trial court on this point, the trial court did not address that issue again, instead proceeding to its ruling that the Garcias owed no duty to Ruiz and Hernandez. The trial court granted final summary judgment in the Garcias' favor. The subsequent written order did not address the affidavit issue. Rather, the order simply stated that there was no duty owed to Ruiz and Hernandez based on the facts of the case, involving a truck that had been permitted to be parked on the lot. This appeal follows.

## ANALYSIS

A trial court's ruling on a motion for summary judgment posing a pure question of law is reviewed de novo. *Sturgill v. Lucas*, 292 So. 3d 462, 465 (Fla. 2d DCA 2020). "Summary judgment is properly entered only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Bair v. City of Clearwater*, 196 So. 3d 577, 581 (Fla. 2d DCA 2016) (citing *Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000)). "[I]f the record raises even the slightest doubt that an issue [of material fact] might exist, that *doubt* must be resolved against the moving party and summary judgment must be denied." *Pilot Constr. Servs. Inc. v. Babe's Plumbing, Inc.*, 111 So. 3d 955, 957 (Fla. 2d DCA 2013) (quoting *Hervey v. Alfonso*, 650 So. 2d 644, 646 (Fla. 2d DCA 1995)).[2]

"Summary judgment should be granted with caution in negligence actions." *Sturgill*, 292 So. 3d at 465 (citing *Moore v.*

---

[2] We note that a change to the summary judgment standard became effective on May 1, 2021. *See In re: Amends. to Fla. R. Civ. P. 1.510*, 309 So. 3d 192 (Fla. 2020). However that change does not affect the holding in this case. *See Shanks v. Bergerman*, 334 So. 3d 681, 684 n.4 (Fla. 2d DCA 2022).

*Morris*, 475 So. 2d 666, 668 (Fla. 1985)). "In such actions, where a party moves for summary judgment, the movant must demonstrate either that there is no negligence or that the plaintiff's negligence was the sole proximate cause of his own injury." *Id.* (citing *Bryant v. Lucky Stores, Inc.*, 577 So. 2d 1347, 1349 (Fla. 2d DCA 1990)). "To establish that there was no negligence, the movant must demonstrate that there is no duty owed to the plaintiff or that it did not breach a duty which is owed." *Id.* (quoting *Bryant*, 577 So. 2d at 1349).

## I. The trial court properly determined that the Garcias did not owe a duty to Ruiz and Hernandez.

Here, the trial court's order rested solely on its determination that the Garcias owed no duty to Ruiz and Hernandez; the trial court did not reach the issue of a breach of any duty. Thus we confine our analysis to the issue of duty as well. "Florida law recognizes the following four sources of duty: (1) statutes or regulations; (2) common law interpretations of those statutes or regulations; (3) other sources in the common law; and (4) the general facts of the case." *Id.* (quoting *Limones v. Sch. Dist. of Lee Cnty.*, 161 So. 3d 384, 389 (Fla. 2015)). "When the duty is based

10

on the fourth prong, the 'factual inquiry into the existence of a duty is limited to whether the "defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." ' " *Id.* (quoting *Limones*, 161 So. 3d at 389 n.4). "Where a defendant's conduct creates a *foreseeable zone of risk*, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." *Id.* at 465-66 (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992)).

A duty of care may arise regardless of whether it has been expressly addressed in statutes or case law. *Id.* at 466 (citing *McCain*, 593 So. 2d at 503). Defendants who create a risk must "exercise prudent foresight" if others could be injured as a result of the risk created by the defendants. *Id.* (quoting *McCain*, 593 So. 2d at 503). "Thus, 'trial and appellate courts cannot find a lack of duty if a foreseeable zone of risk more likely than not was created by the defendant.' " *Id.* (quoting *McCain*, 593 So. 2d at 503).

Here, Ruiz and Hernandez alleged that the Garcias both had a duty to maintain the lot in a reasonably safe condition and to

11

prevent unreasonable and dangerous activities from occurring on the lot. The allegations in the complaint relating to the Garcias' alleged breach of that duty clearly indicate that the claims were not based on the lot being dangerous in and of itself but instead were based on the Garcias' alleged failure to implement safeguards to keep the lot safe for those who entered upon it. Indeed, in Ruiz and Hernandez's response to the Garcias' motion for summary judgment, Ruiz and Hernandez asserted that their allegations "do not arise out of negligent maintenance of [the] property, but rather, [the Garcias'] active or passive negligence." Ruiz and Hernandez asserted that the Garcias had a duty of reasonable care to them.

Active negligence has been defined as where a "tort-feasor actually does something to harm the injured party"; passive negligence has been defined to mean that "the tort-feasor's failure to do something to its property resulted in harm to the injured party." *Nicholson v. Stonybrook Apartments, L.L.C.*, 154 So. 3d 490, 494 (Fla. 4th DCA 2015). Ruiz and Hernandez ask this court to construe their claims as either active or passive *ordinary negligence*, that is, personal negligence against the Garcias. But a review of the claims and the case law discussed herein convinces us that the

claims are more appropriately reviewed as being based on premises liability, which involves passive negligence. *See Nicholson*, 154 So. 3d at 494; *see also Bovis v. 7-Eleven, Inc.*, 505 So. 2d 661, 665 (Fla. 5th DCA 1987) (referring to premises liability as involving passive negligence).

"In ordinary negligence cases, the defendant owes the plaintiff a duty of reasonable care, regardless of the relationship between the defendant and plaintiff." *Nicholson*, 154 So. 3d at 492. And "in cases where a landowner is held to standards of ordinary negligence pertaining to a [plaintiff's] injuries, the injuries have no real relationship to the premises." *Id.* at 494; *see also Hix v. Billen*, 284 So. 2d 209, 210 (Fla. 1973) (explaining that where the plaintiff's claim was based on the defendant's active conduct in turning on the ignition of a car when the plaintiff had asked her not to, the accident that injured the plaintiff could have occurred anywhere and thus the "action really has no relationship to [the] defendant's [p]remises").

But "in premises liability cases, the defendant's duty to the plaintiff is dependent on the plaintiff's status to the land." *Nicholson*, 154 So. 3d at 492 (citing *Fla. E. Coast Ry. Co. v. S.E.*

13

*Bank, N.A.*, 585 So. 2d 314, 316 (Fla. 4th DCA 1991)); *see also*

*Maldonado v. Jack M. Berry Grove Corp.*, 351 So. 2d 967, 968 (Fla.

1977) ("Only when liability is predicated upon an alleged defective

or dangerous condition of the premises is the injured person's

status relevant."); *cf. Fla. E. Coast Ry. Co.*, 585 So. 2d at 316

(explaining that plaintiff's status as a trespasser on train couplings

was "irrelevant where the evidence and allegations are not that the

injury was caused by a condition of the train but solely by the

negligent operation of it").

While it is true that the type of accident in this case—a truck

breaking loose from whatever was holding it in place and running

over someone—could have happened anywhere, Ruiz and

Hernandez's theory of liability is clearly dependent on the fact that

the accident occurred on the Garcias' lot.  If the accident had

occurred off the lot, Ruiz and Hernandez would have no basis to sue

the Garcias.  This is not a case where the landowner or one of his or

her agents/employees was operating equipment on the lot in such a

way that it created a dangerous situation which the landowner then

failed to rectify.  *Cf. Maldonado*, 351 So. 2d at 968 (involving the

operation of hydraulic equipment—by an independent contractor

14

hired by the landowner—around children which "created a dangerous situation" and explaining that a landowner is not shielded from liability where there is a known danger and the landowner was negligent by failing to take sufficient precautions to rectify the dangerous situation, even where an independent contractor created the dangerous condition). Nor is it a case where the landowner actively engaged in conduct that injured the plaintiff. *Cf. Hix,* 284 So. 2d at 210 (involving a plaintiff who was injured by an engine fire that occurred after the defendant turned on the ignition of the car despite the plaintiff's instruction not to, with the court deeming the action to be one based on active negligence). Ruiz and Hernandez's claims are that the Garcias *failed to do something on the lot* that resulted in harm to Ruiz, i.e., they failed to properly prohibit mechanical repairs from being performed on the lot or to implement safeguards related thereto. Consequently, we construe their claims as being predicated on premises liability involving passive negligence.

However, even if we construed the claims as being based on ordinary negligence, our disposition would be the same. As will be discussed herein, we have applied an "invitee" status to Ruiz for

15

purposes of the premises liability analysis, and invitees are afforded the same duty as a person under an ordinary negligence standard: reasonable care to maintain safe conditions. *See Valladares v. Bank of Am. Corp.,* 197 So. 3d 1, 13 (Fla. 2016) ("[B]usinesses owe a duty of reasonable care to their invitees to maintain safe conditions on business premises"). Thus there is no distinguishable difference in analyzing—under either theory—whether the trial court erred by concluding that the Garcias owed no duty to Ruiz and Hernandez.[3]

---

[3] Ruiz and Hernandez argue that the trial court's ruling is unclear as to whether it determined that there was no duty under the ordinary negligence or premises liability theories. But to the extent that Ruiz and Hernandez contend that a reversal and remand is required for the trial court to expressly consider this case under a premises liability theory, we disagree. Even if the trial court erroneously analyzed the case under the ordinary negligence standard, we conclude that we can apply the tipsy coachman doctrine to affirm based on the record before the trial court. *See State Farm Fire & Cas. Co. v. Levine,* 837 So. 2d 363, 365 (Fla. 2002) ("[T]he key to applying the tipsy coachman doctrine is that the record before the trial court must support the alternative theory or principle of law."). The trial court "reached a supportable result based on proof in the record," and thus remanding for express findings "would serve no positive purpose and would needlessly prolong this . . . litigation." *Delivorias v. Delivorias,* 80 So. 3d 352, 354 (Fla. 1st DCA 2011); *cf. Levine,* 837 So. 2d at 365 (explaining that tipsy coachman doctrine could not be applied in that case because the record did not provide an adequate basis for the reviewing court to reach a conclusion on an issue as a pure matter of law).

There are three categories of entrants onto land: (1) trespassers, (2) licensees, and (3) invitees. *Wood v. Camp*, 284 So. 2d 691, 693-94 (Fla. 1973). It is the relationship between the landowner and entrant which defines the duty owed. *Id.* at 694. Of those three categories, invitees are owed the highest duty: reasonable care. *Id.* In this appeal, the Garcias have acknowledged that Ruiz may have been, at least initially, a business invitee as he was invited onto the lot by Cabrera to perform mechanical work on her truck. Thus for purposes of this opinion, we assume that Ruiz was, in fact, an invitee.[4]

In the context of premises liability claims, invitees are owed the following: (1) the duty "to use reasonable care in maintaining

---

[4] The duties owed to the other two categories of entrants involve lesser standards of care. *See, e.g., Hix*, 284 So. 2d at 210 (noting a party's limited liability to trespassers and uninvited licensees to avoid "willful injury" and if the trespassers and uninvited licensees' presence is known to "give warning of any known dangerous condition not open to ordinary observation by the uninvited licensee or trespasser"). However, a determination that no duty was owed by the Garcias to Ruiz as an invitee, which has the highest standard of care, necessarily forecloses the argument that a duty was owed utilizing the lesser standards of care.

property in a reasonably safe condition";[5] and (2) a duty to warn of concealed dangers that the landowner knows about or should know about and "which are unknown to the invitee and cannot be discovered by him through the exercise of due care." *Knight v. Waltman*, 774 So. 2d 731, 733 (Fla. 2d DCA 2000) (quoting *Pittman v. Volusia County*, 380 So. 2d 1192, 1193 (Fla. 5th DCA 1980)). Turning first to the duty to warn, the Garcias rely on *Knight* for the proposition that an invitee cannot recover based on failure to warn if that invitee's knowledge of the danger is equal to or superior to that of the landowner. *Id.* They contend that Ruiz, a truck mechanic, would have far superior knowledge about the dangers of working on a commercial truck than the Garcias. However, this ground was not raised below as a basis to dispense with the duty to warn, and thus the Garcias cannot rely on it here. *See Trainor v. PNC Bank, Nat'l Ass'n*, 211 So. 3d 366, 368 (Fla. 5th DCA 2017) (citing cases for the proposition that a summary judgment cannot

---

[5] *See also Metsker v. Carefree/Scott Fetzer Co.*, 90 So. 3d 973, 978 (Fla. 2d DCA 2012) (explaining that an owner of a business open to the public must "exercise reasonable care to maintain their premises in a safe condition" (quoting *Owens v. Publix Supermarkets, Inc.*, 802 So. 3d 315, 320 (Fla. 2001))).

be affirmed on grounds not raised below).  Yet even without consideration of that argument, there is no basis to hold the Garcias liable for failure to warn Ruiz.  The Garcias would have had to know that the performance of mechanical repairs on the lot was dangerous, and Ruiz would have to have had no knowledge of that fact and to have been without the ability to discover it with due care.  *See Knight*, 774 So. 2d at 733.  Such a scenario defies logical sense.  Even if the Garcias knew that mechanical repairs were being performed on the lot and that such conduct created a dangerous condition, Ruiz—the person who actually performed the repairs— would know that fact as well.

Turning to the issue of the duty to use reasonable care in maintaining the property in a reasonably safe condition, we note that a landowner "is not an insurer of the safety of persons" on his property, "nor is he subject to strict liability or liable per se for injuries resulting from dangerous conditions on owned property." *Bovis*, 505 So. 2d at 662-63.

> The crux of a cause of action for premises liability is not the ownership of the premises, but the failure of the possessor of the premises to use due care (negligence) in permitting licensees and invitees to come, unwarned, to an area where, *foreseeably*, they may be injured by a

19

dangerous condition which to them is not readily apparent.

*Id.* at 663 (emphasis added) (footnotes omitted); *see also Metsker v. Carefree/Scott Fetzer Co.*, 90 So. 3d 973, 977 (Fla. 2d DCA 2012) (noting that in premises liability cases, "the issue of whether a party has a duty of care does not depend on ownership" but rather on "whether the party has the ability to exercise control over the premises").

> [T]he determining factor . . . is the failure of a person who is in actual possession and control (be it the owner, an agent, a lessee, a construction contractor, or other possessor with authority or control) to use due care to warn or to exclude licensees and invitees from areas known to the possessor to be dangerous because of operations, activities, or conditions.

*Trainor*, 211 So. 3d at 368.

The essence of Ruiz and Hernandez's claims is that the Garcias owed them a duty to prevent mechanical work from being performed on the lot by its lessees or the lessees' invitees without having safeguards in place. But to adopt this argument would render any landowner susceptible to a negligence suit—simply based on ownership status—where such repairs were performed on the property by lessees or the lessees' invitees and where the

20

landowner had not preemptively employed safeguards to prevent speculative injury to persons performing such work (which could vary widely depending on the circumstances). In essence, it requires a landowner to *presume* that its lessees will violate the rules established by the landowner or that they will use their leased spot for a use beyond what was intended and that someone will be injured as a result. Such a scenario does not give rise to a *foreseeable* risk of harm such that a landowner is required to employ safeguards to mitigate or eliminate any such risk. *Cf. Valladares*, 197 So. 3d at 13 (explaining that the duty to maintain safe conditions on business premises "not only applies to dangerous conditions that arise and require correction, but also to taking action to mitigate or eliminate the possibility of a foreseeable risk of harm before it occurs").

If a landowner or his agents/employees have not created a dangerous condition or failed to correct one that was known to them but unknown to entrants, then no reasonably foreseeable zone of risk has been created and there is no basis to impose a duty on a landowner. There was no known dangerous condition here because it is undisputed that the lot was being used for parking.

21

There has been no allegation that the Garcias advertised it as a truck repair facility. And the Garcias did not create a known dangerous condition merely by owning the lot and permitting trucks to be parked thereon. If a dangerous condition was created by the mechanical work being performed, the Garcias had no involvement in it; rather, such a condition was created by truck owners who requested such work to be done on the lot or by the truck mechanics who opted to perform the work on the lot themselves. But "a landowner is not, by that status alone, responsible for injuries caused solely by a lessee's operations and activities." *Fla. Power & Light Co. v. Morris*, 944 So. 2d 407, 413-14 (Fla. 4th DCA 2006); *see also Craig v. Gate Maritime Props., Inc.,* 631 So. 2d 375, 377 (Fla. 1st DCA 1994); *Bovis,* 505 So. 2d at 664.

Ruiz and Hernandez assert that the Garcias retained control over the lot such that they had the duty to maintain it in a reasonably safe condition. Before we address the merits of this issue, we note that Ruiz and Hernandez have taken an inconsistent approach in how they presented this issue both here and below. In their response to the motion for summary judgment, they did not assert that the issue of control was a question of fact that precluded

22

summary judgment. And at the summary judgment hearing, Ruiz and Hernandez only briefly mentioned the issue of control as it pertains to premises liability, asserting that Ruiz believed that the person whom they believed was the Garcias' agent—the homeless man—exerted control when he told Ruiz to wait for Cabrera and that, for that reason, Ruiz should be labeled an invitee. While Ruiz and Hernandez argued at the hearing that the case law suggested that the issue of whether Ruiz was an invitee was typically a question for the jury, they never made the same argument regarding the issue of whether the Garcias retained control, a necessary component for a premises liability action. And notably, the issue of control is not solely tied to invitee status. It does not appear from our reading of the transcript that the Garcias raised any dispute on this issue at the hearing or that the trial court made any finding related to it.

In their initial brief, Ruiz and Hernandez pointed out that the Garcias never argued below the issue of whether they retained control and that the trial court never ruled on it. This is not entirely correct. While the Garcias never expressly asserted below that they did not retain control over the lot, they did note in their

motion for summary judgment that the duty to protect others from dangerous conditions rested on the right to control the premises, but they then argued that there was no basis to hold them liable since they did not cause or contribute to the accident in any way. This argument at least implies that the Garcias did not retain sufficient control over the premises so as to be subject to a duty to invitees. However, the trial court never ruled on the issue either orally at the hearing or in its order.

In their initial brief, Ruiz and Hernandez also asserted that there was no dispute about the control issue based on the facts of the case. Yet, in their reply brief, Ruiz and Hernandez for the first time asserted that "the issue of '[a] tenant's ability to manage and control an area is a question of fact for a jury to decide,' " quoting *City of Naples v. Chops City Grill, Inc.*, 331 So. 3d 291, 294 (Fla. 2d DCA 2021). Presumably, this was in response to the Garcias' arguments in their answer brief about what constitutes sufficient control for purposes of a premises liability claim.

However, to the extent that Ruiz and Hernandez are now arguing that summary judgment was improperly entered because the issue of control was a genuine issue of material fact, they are

24

precluded from doing so. "[I]t [is] inappropriate for a party to raise an issue for the first time on appeal from summary judgment." *Dober v. Worrell*, 401 So. 2d 1322, 1324 (Fla. 1981); *see also Vogel v. Cornerstone Drs. Condo. Ass'n*, 299 So. 3d 1170, 1175 n.1 (Fla. 2d DCA 2020) ("We decline to address [the appellant's] argument, made for the first time on appeal, that summary judgment was improper [based on another ground]."); *Wildwood Props., Inc. v. Archer of Vero Beach, Inc.*, 621 So. 2d 691, 692 (Fla. 4th DCA 1993) (affirming summary judgment "because the grounds now raised were not brought to the attention of the trial court in opposition to the summary judgment"). Furthermore, a party may not raise an issue for the first time in a reply brief. *Plichta v. Plichta*, 899 So. 2d 1283, 1287 (Fla. 2d DCA 2005) ("Issues raised on appeal for the first time in a reply brief are not properly before this court and will not be considered."). Thus Ruiz and Hernandez may not rely on this argument as a basis for reversal.

Turning to the merits of Ruiz and Hernandez's argument, they argue that the Garcias had control over the lot because they had the right to enter the lot and stop people from working on the trucks. We conclude that more is required. Indeed, case law holds

25

that a landlord's right to enter leased premises is not sufficient to constitute control over the property so as to impose a duty on the landlord to protect third parties. *See, e.g., Fla. Power & Light Co.*, 944 So. 2d at 413. The fact that the Garcias may have been able to generally instruct people to stop performing mechanical work on trucks on the lot does not somehow render them in control of their lessees' operations and activities. Lessees still retained the ability to—and Ginarte's deposition testimony reflected that some did— have their trucks towed off the lot for repairs, and there is nothing suggesting that the Garcias had control or involvement in those decisions. The type of accident that occurred here could just as easily occur in a location where a truck is towed. But simply owning the lot and having the ability to instruct people not to perform mechanical work there is not sufficient to impose a duty on the Garcias to protect a lessee's invitee who is injured solely as a result of a lessee's operations and activities. And while the Garcias may have retained the responsibility for the general maintenance of the lot, Ruiz and Hernandez have already conceded that their claims are not predicated on negligent maintenance of the property. Ruiz and Hernandez's allegations do not allege injuries that were

26

the result of the truck being parked on the lot; they allege injuries that were the result of an activity solicited by a lessee, Cabrera—something over which the Garcias had no control.

Additionally, Ruiz and Hernandez have cited no authority establishing that there is a general duty on landowners to "properly prohibit mechanical repairs from occurring" on privately owned property or that the failure to do so results in a foreseeable zone of risk. Nor have they explained why such a duty should be imposed on a landowner when a mechanic elects to perform repairs on such property on his own accord.[6] We are not persuaded that a landowner has a duty to protect a lessee's invitee from an alleged "unreasonable and dangerous" activity that is beyond the scope of what the leased premises were intended to be used for (i.e., parking), solicited by the lessee, and which the invitee knows is dangerous but elects to engage in anyway.

The Garcias' ownership of the lot did not create a foreseeable zone of risk, i.e., that a lessee's invitee would be injured as a result

---

[6] Ruiz and Hernandez have not asserted that the Garcias instructed Ruiz (personally or through an agent/employee) that the repairs had to be performed on the lot.

of the lessee's conduct in having mechanical work performed in their leased space. Thus the Garcias were under no duty to take further action to prevent mechanical repairs from being performed on the lot or to implement safeguards related thereto.

## II. The trial court never reached the issue of breach.

As their second issue, Ruiz and Hernandez argue that there were several genuine issues of material fact regarding whether the Garcias breached their duty. But because the trial court determined there was no legal duty flowing from the Garcias to Ruiz and Hernandez, it never decided that issue. Thus we decline to reach that issue in the first instance.

We note that within their second argument, Ruiz and Hernandez contend that the trial court abused its discretion in refusing to consider their expert affidavit because it had been timely filed and because it bore on the issue of a "negligent breach of a legal duty" and whether or not the Garcias "breached their duty of care." But because we have concluded that the trial court properly determined that the Garcias owed Ruiz and Hernandez no duty, there could be no breach and thus the issue of the trial court's failure to consider their expert affidavit is moot.

CONCLUSION

We conclude that under the facts of this case, the trial court did not err in concluding that the Garcias owed no duty to Ruiz and Hernandez. We therefore affirm the final summary judgment.

Affirmed.

KHOUZAM and SLEET, JJ., Concur.

––––––––––––––––––––––––

Opinion subject to revision prior to official publication.