818 So.2d 645 (2002)
Michael P. WELCH, as assignee of David J. and Adele Pinkster, Howard Pinkster d/b/a A.T.I.M.A. Prime Properties, and American Rental Dealers Insurance, Appellant,
v.
COMPLETE CARE CORPORATION and Professional Business Owners Association, Inc., Appellees.
No. 2D00-5250.
District Court of Appeal of Florida, Second District.
June 7, 2002.
*647 Roy L. Glass of Law Offices of Roy L. Glass, P.A., St. Petersburg, for Appellant.
Michael Miller of Pine & Berger, Tampa, for Appellee Complete Care Corp.
Shari D. Castagnos and J. Gregory Giannuzzi of Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A., Tampa, for Appellee Professional Business Owners Association, Inc.
NORTHCUTT, Judge.
Michael Welch challenges a final summary judgment entered in favor of Complete Care Corporation and Professional Business Owners Association (PBOA) and underlying orders that dismissed several counts of his complaint. As we will explain in detail, we affirm in part and reverse in part.
Welch was employed by Complete, a lawn and landscaping company. Complete *648 leased its business premises, a storage unit, from Prime Properties. Welch was injured on the job when the garage door on the storage unit malfunctioned. When the door mechanism broke, a piece of metal struck Welch in the face, causing severe injuries to his eye and cheek. Welch received workers' compensation benefits from Complete and its insurer, PBOA.
Welch also filed suit against Complete's landlord, Prime and its principals, David, Adele, and Howard Pinkster, asserting that they breached their duty to maintain the premises. He ultimately settled that case for $70,000. As part of the settlement, Prime and the Pinksters also assigned to Welch "all legal and equitable rights of action, claims and interest, including but not limited to indemnity and contribution which [they] may have against Complete and its insurance company."
As Prime's assignee, Welch then sued Complete and PBOA. He asserted five counts: declaratory relief, contractual indemnity, common law indemnity, contribution, and equitable subrogation. During the course of the litigation, the circuit court dismissed all the counts except the ones seeking declaratory relief and damages based on contractual indemnification. The court eventually entered summary judgment in favor of Complete and PBOA on those two counts. In this appeal, Welch challenges the court's rulings on his claims for equitable subrogation, common law indemnity, and contractual subrogation.

A. Equitable Subrogation.
In Dade County School Board v. Radio Station WQBA, 731 So.2d 638, 646 (Fla.1999), the court held that equitable subrogation is generally appropriate when the following five factors exist:
(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party.
Thus, in the prototypical tort case, equitable subrogation arises when one of several defendants pays the plaintiff's entire claim that, in equity, should have been paid by one of the other defendants. See id. WQBA further limited the doctrine in tort cases to situations where the party seeking subrogation has obtained a release for the other party responsible for the debt. Cf. id. at 647 ("In the present case, equitable subrogation would only be proper if it can be established that Three Kings [the party seeking subrogation] paid the entire debt owed to a particular plaintiff and that in doing so, Three Kings obtained a release for DCSB [the party against which subrogation was sought] from the plaintiff").
In this case, equitable subrogation would only be appropriate if Prime had paid Welch's entire claim, some or all of which should have been paid by Complete, and if Prime had obtained a release for Complete from Welch. The record does not establish these facts. But there is another reason why equitable subrogation was not applicable in this case. Under the doctrine, the person discharging the debt, Prime, stood in the shoes of the person whose claim had been discharged, Welch, and succeeded to his rights against Complete and PBOA. See id. But Welch had no rights to sue Complete and PBOA in tort because Complete was his employer and paid workers' compensation benefits for the accident. It is immune from suit under section 440.11, Florida Statutes (1993). As the WQBA court noted, if the plaintiff/subrogor has no rights against the third party, the subrogee has nothing to inherit. 731 So.2d at 647. In effect, *649 Prime's assignment of its equitable subrogation rights against Complete to Welch merely assigned Welch's own non-existent rights back to him. The circuit court correctly dismissed Welch's claim, as Prime's assignee, for equitable subrogation.

B. Common Law Indemnification.
To succeed on a claim of common law indemnity, Welch must show (1) that Prime was without fault; and (2) that Prime's liability for Welch's damages was vicarious and solely based on the wrong of Complete. See Id. at 642; Houdaille Indus., Inc. v. Edwards, 374 So.2d 490, 493 (Fla.1979); Dominion of Can. Ins. Co. v. State Farm Fire & Cas. Co., 754 So.2d 852, 855 (Fla. 2d DCA 2000). We will address the issue of Prime's fault in our discussion of the claim for contractual indemnification. We need not discuss it here because the record does not show any legal relationship between Prime and Complete which would render Prime vicariously, constructively, derivatively, or technically liable to Welch because of some negligence or fault on Complete's part. See Marino v. Weiner, 415 So.2d 149, 150 (Fla. 4th DCA 1982).
As cogently explained in Bovis v. 7-Eleven, Inc., 505 So.2d 661 (Fla. 5th DCA 1987), a property owner does not insure the safety of persons on his property; he is not strictly liable or liable per se for injuries resulting from a dangerous condition existing on the property. This is because premises liability is not predicated on ownership of the property, but on the failure of the possessor of the property to use due care. Id. at 662-63. The duty to protect others from injury resulting from a dangerous condition on the premises rests on the right to control access to the property. This right is usually in the hands of the tenant, who is in possession and control. Id. at 664. Thus, if a lessor completely surrenders possession and control of a premises to a lessee, the lessor will not be liable for injuries to third persons that occur on the property. Wal-Mart Stores, Inc. v. McDonald, 676 So.2d 12, 14 (Fla. 1st DCA 1996), approved on other grounds sub nom Merrill Crossings Assocs. v. McDonald, 705 So.2d 560 (Fla. 1998).
This record establishes that Complete was in possession and control of the rented storage space. An employee of Complete directed Welch to attempt to open the jammed garage door, which resulted in his injuries. Because Prime was not in possession or control of the property, it was not vicariously liable for Welch's injuries. Absent vicarious liability, Prime, and Welch as its assignee, had no action for common law indemnity against Complete. Houdaille, 374 So.2d at 493; Marino, 415 So.2d at 151. The circuit court correctly dismissed this count of Welch's complaint.[1]

C. Contractual Indemnity-Complete.
Welch, as Prime's assignee, sued Complete for contractual indemnification based on two clauses in the lease agreement between Complete and Prime:
7. INSURANCE

The Lessee [Complete] assumes full liability for and agrees to indemnify and save harmless the Lessor [Prime] from *650 any injury or damage of any nature to any person entering upon or using the Leased property for any lawful purpose during the term of this lease, and the Lessee will, at its expense, carry and deposit with the Lessor a policy of owners, landlords and tenants liability insurance covering the Leased property in a minimum amount of One Hundred Thousand Dollars ($100,000.00) to Three Hundred Thousand Dollars ($300,000.00). The Lessor shall carry at its own expense, fire, windstorm, and extended coverage insurance upon the building hereby leased: provided, however, that in the event the business of the Lessee causes increase in the fire, windstorm, and extended coverage insurance premiums, the amount of said increase shall be payable to the Lessor upon demand and shall constitute additional rental hereunder. Lessee agrees to pay his proportionate share of all insurance increase over the base year insurance.
16. INDEMNIFICATION

Lessor shall not be liable for any damage or injury to any person or property whether it be the person or property of the Lessee, Lessee's employees, agents, guests, invitees or otherwise by reason of Lessee's occupancy of the Leased premises or because of fire, flood, windstorm, acts of God or any other reason. Lessee agrees to indemnify and hold harmless Lessor from and against any and all loss, damage, claim, demand, liability or expense by reason of damage to person or property which may arise or be claimed to have arisen as a result of the occupancy or use of said Leased premises by Lessee or on account of any injury or damage caused to any person or property on or in the Leased premises, providing, however, that Lessee shall not so indemnify as to any loss or damage due to the fault of Lessor.
Florida courts view with disfavor contracts that attempt to indemnify a party against its own negligence. Charles Poe Masonry v. Spring Lock Scaffolding Rental Equip. Co., 374 So.2d 487, 489 (Fla. 1979). These contracts will be enforced only if they express in clear and unequivocal terms an intent to indemnify against the indemnitee's own wrongful acts; general terms of indemnity will not suffice. Id.; Cox Cable Corp. v. Gulf Power Co., 591 So.2d 627, 629 (Fla.1992). Here, the "Indemnity" provision did not clearly indicate Complete's intent to indemnify Prime for its own wrongdoing; in fact, the provision expressed a contrary intent: "Lessee shall not so indemnify as to any loss or damage due to the fault of Lessor." Under this provision, Prime was not entitled to contractual indemnification for its own negligent acts. While the "Insurance" provision did not clearly state Complete's intention not to indemnify Prime for its own negligence, it contained only general terms of indemnity. These terms were insufficient under Cox Cable. Thus, neither provision in the contract indemnified Prime for its own negligence.
But our inquiry does not end there. The circuit court granted summary judgment in favor of Complete and PBOA on the ground that Prime was wholly or partially at fault in Welch's accident. This finding was based on Welch's assertions in his suit against Prime and on his expert's opinion in proceedings to determine whether Welch would be required to pay a portion of the settlement proceeds to PBOA in satisfaction of its workers' compensation lien. Prime, however, never admitted any negligence in the suit brought by Welch. In fact, the release Welch signed in connection with their settlement specifically acknowledged that Prime's $70,000 payment to him "is not to be considered as an admission of liability on the *651 part of [Prime], but is in full settlement and compromise of a disputed claim which [Welch] has asserted against [Prime], and for which [Prime] ha[s] denied and still den[ies] liability." Thus Prime steadfastly denied its liability in the face of Welch's action against it.
Welch's allegations in his previous suit against Prime did not establish Prime's fault in this lawsuit. A party seeking indemnity is not locked in by the injured person's allegations against it in the underlying lawsuit. Safecare Med. Ctr. v. Howard, 670 So.2d 1020, 1023 (Fla. 4th DCA 1996); see also Okuboye v. Hubert Rutland Hosp., 466 So.2d 342, 343 (Fla. 2d DCA 1985) (holding that, in an indemnity action, the negligence of the party seeking indemnity is not established solely by the allegations in the injured party's complaint). Thus, the basis for the summary judgment on this count was flawed. As Prime's assignee, Welch must be permitted to argue that Prime was not legally or factually responsible for his damages. Accordingly, we reverse the summary judgment entered in favor of Complete on the claim for contractual indemnification and remand for further proceedings.

D. Contractual indemnityPBOA.
Our determination to reverse the summary judgment in favor of Complete on the contractual indemnification claim does not resolve the issue of whether PBOA is liable to pay the claim. The employer's liability insurance contract[2] between them provided:
C. Exclusions
This insurance does not cover:
1. Liability assumed under a contract.
Based on this exclusion, the circuit court found that PBOA would not be liable to pay Complete's damages under a contractual indemnity theory. We agree, and affirm the summary judgment on this claim in favor of PBOA.
FULMER and SILBERMAN, JJ., Concur.
NOTES
[1] In Welch's count for common law indemnification, he asserted that Prime, his assignor, was passively rather than actively negligent. As pointed out in Houdaille Industries v. Edwards, 374 So.2d 490, 492 (Fla.1979), such allegations are not the equivalent of pleading vicarious liability. As the Houdaille court further explained, the concept of active versus passive liability is really a concept of fault. As previously noted, we will discuss the issue of Prime's fault in connection with the claim for contractual indemnity.
[2] PBOA did not actually issue a written policy to Complete because Complete was self-insured. Welch asserted that PBOA was bound to provide coverage pursuant to the NCCI Standard of Employers' Liability Insurance Coverage. This policy contains the exclusion for liability assumed under a contract.