438 So.2d 899 (1983)
Wayne DAVIDSON; W.D. Ranch, Inc., a Florida Corporation for Profit; W.D. Ranch, a Partnership Consisting of W.E. Davidson, R.C. Reilly, D.G. Snow, D. Charland, T. Jenkins, J.E. Beal, P. Arnett, Clyde Smith and United States Fidelity & Guaranty Company; and the Collier Company, Appellants,
v.
Audrey HOWARD, Personal Representative of Clifford Howard, Deceased, On Behalf of the Estate of Clifford Howard, Dale Howard and Audrey Howard, Appellees. Wayne Davidson; W.D. Ranch, Inc., a Florida Corporation for Profit; W.D. Ranch, a Partnership Consisting of W.E. Davidson, R.C. Reilly, D.G. Snow, D. Charland, T. Jenkins, J.E. Beal, P. Arnett, Clyde Smith and United States Fidelity & Guaranty Company; and Audrey Howard, Personal Representative of Clifford Howard, Deceased, On Behalf of the Estate of Clifford Howard, Dale Howard and Audrey Howard, Appellants/Cross Appellees,
v.
The COLLIER COMPANY, Appellee/Cross Appellant.
Nos. 80-2180, 80-2185.
District Court of Appeal of Florida, Fourth District.
September 21, 1983.
Rehearing Denied November 8, 1983.
*900 Nancy Little Hoffman, P.A., Fort Lauderdale, for W.D. Ranch.
Arnold R. Ginsberg of Horton, Perse & Ginsberg, P.A., and George P. Telepas, P.A., Miami, for Audrey Howard.
G. William Allen, Jr., of Walton, Lantaff, Schroeder & Carson, Fort Lauderdale, for The Collier Company.
DOWNEY, Judge.
These consolidated appeals involve a judgment for the plaintiffs in a wrongful death action and a summary judgment on a cross claim for indemnity.
The evidence reflects that on February 23, 1976, Clifford Howard was killed when his gasoline truck hit a cow on State Road 84 during the night time. The cow, which got on the road through a 60 or 120 foot gap in a fence around the land on which it was grazing, was owned by Weiser and Freidheim, Incorporated. On January 1, 1976, the Collier Company, owner of a large tract of land abutting State Road 84, had leased said property to W.D. Ranch, a partnership, for grazing purposes. Sometime prior to February 23, 1976, W.D. Ranch allowed Weiser and Freidheim, Incorporated, to graze cattle on said property. The rental under the Collier-W.D. Ranch grazing permit was the equivalent of the amount of the county ad valorem taxes assessed against the property. Under its arrangement with W.D. Ranch Weiser and Freidheim paid the taxes, ran several hundred head of cattle on the property, and was supposed to maintain the fences around the property. In addition to Weiser and Freidheim's cattle grazing operation, W.D. Ranch used the property for recreational purposes, such as hunting and YMCA and SWAT team activities, and for some farming.
This suit was commenced by Howard's widow and son and the personal representative of his estate against the Collier Company; W.D. Ranch, a partnership; and Weiser and Freidheim, Incorporated. Prior to trial the plaintiffs settled with Weiser and Freidheim for $350,000, and the trial court granted a pretrial summary judgment in favor of the Collier Company against W.D. Ranch on a cross claim for indemnity. The jury returned a verdict in favor of the plaintiffs and against both the Collier Company and W.D. Ranch for $760,000 finding each defendant 45% negligent and the decedent 10% negligent.
The sixth amended complaint, upon which the case went to trial, had similar allegations of negligence against the Collier Company and W.D. Ranch. Both allegedly were custodians of the cow with which Clifford Howard's truck collided. Collier allegedly "had a duty to maintain its fences in order to restrain cattle grazing on its *901 land from running at large upon public roads, Florida Statute 588.14;" and W.D. Ranch allegedly "had a duty to restrain the cattle in their custody from running at large upon public roads. Florida Statute 588.14... ." Further, Collier allegedly knew or should have known that cattle on its land were roaming upon the public road prior to the accident, and W.D. Ranch allegedly knew or should have known that cattle in its custody were roaming upon the public road prior to the accident. Collier allegedly acted willfully and recklessly in failing to inspect and maintain fences in good condition for the enclosure of "the cattle" and W.D. Ranch purportedly acted willfully and recklessly in failing to inspect and maintain a fence in good condition for the enclosure of "the cattle in its custody... ."
Although the parties never did agree upon the issues in the case the court charged the jury that the issue to be decided between the plaintiffs and the Collier Company was whether Collier "was negligent in its maintenance of the fence," and the issue to be decided regarding W.D. Ranch was "whether W.D. Ranch had care, control or custody of the cattle involved in this case, and if so, whether such partnership was negligent in its maintenance of the fence."
During the trial the parties were primarily concerned with applicability of Chapter 588, Florida Statutes (1975). A portion of this chapter, Sections 588.12-588.26 (Chapter 25236, Laws of Florida (1949)), is known as the Warren Act whereby the legislature in 1949 declared it necessary to have a statewide uniform livestock act embracing all public roads. § 588.12, Fla. Stat. It was the purpose of the act to place a duty upon all owners of livestock to prevent their stock from running at large or straying upon the public roads of this state. § 588.14, Fla. Stat. If an owner of livestock either willfully, intentionally, carelessly, or negligently allowed his stock to run at large or stray upon public roads he became liable for any damage to persons or property. § 588.15, Fla. Stat. The act defines an "owner" of livestock as any person "owning or having custody of or in charge of livestock." § 588.13(2), Fla. Stat.
Confusion has prevailed in this case because the plaintiffs have proceeded upon the theory that Section 588.11, Florida Statutes (Chapter 25357, § 7, Laws of Florida (1949)), which reads as follows:
The owner of legally enclosed land shall maintain in reasonable good condition the fence or enclosure around such land and shall maintain in legible condition any and all posted notices as required by §§ 588.09, 588.10, but a substantial or reasonably effective compliance with the provisions of §§ 588.011, 588.09, 588.10, disregarding minor or inconsequential differences in the size, shape or condition thereof, shall be sufficient for the purpose of evidencing the legal enclosure of said land.
requires all owners of land to fence their property. Thus, the plaintiffs contended throughout that the Collier Company as the owner of the land had a continuing duty to maintain adequate fencing on the property though the Collier Company neither owned nor had custody or control of any livestock on said property. We hold that is an improper construction of Section 588.11 and a misunderstanding of the Warren Act. The latter act imposes a duty not on land owners but on the owners of livestock. They are enjoined to keep their livestock off the public roads, whether by fence or wall or simple tether, it matters not. The sections of Chapter 588 having to do with a "legal fence" and "legally enclosed" land have nothing to do with the Warren Act. Rather, they were enacted to help protect landowners against human trespassers. Under Section 588.09, Florida Statutes, land becomes legally enclosed (or posted, the terms being synonymous) land when: (a) it is enclosed by means of a legal fence; (b) notices to the public are placed in a particular manner along the non-acqueous boundaries of the land; and (c) the fences, enclosures, and posted notices are maintained in a certain way. Sections 588.011(1)-(3), Florida Statutes, describe the legal fence *902 that satisfies requirement (a). Section 588.10, Florida Statutes, describes the signs and posting thereof that satisfy requirement (b). Section 588.11, Florida Statutes, does two things. First, it describes the maintenance necessary to satisfy requirement (c), and second, it provides that substantial compliance with fencing and sign posting requirements (a) and (b) is sufficient to render land legally enclosed land. We hold that Section 588.11, Florida Statutes, imposes no absolute legal duty upon an owner of land to fence his land or to maintain a fence upon his land or suffer adverse legal consequences for failing to erect or maintain a legal fence. All Section 588.11 does (or rather did at the time it was passed) is to impose a conditional legal duty upon a landowner to maintain legal fences and legal signs around his land if that land is to have the protection of criminal trespass statutes. See 1950 Op.Att'y Gen.Fla. 050-13 (January 13, 1950); 1954 Op.Att'y Gen.Fla. 054-61 (March 11, 1954); 1957 Op.Att'y Gen.Fla. 057-359 (November 15, 1957). Thus, we conclude that the liability plaintiffs seek to impose must be visited upon the owner of the cow in question as defined by Section 588.13, viz., the legal owner or the person having custody of or in charge of the animal, and not the person who is merely the legal owner of the land on which the cow was grazing.
Although the complaint herein charged the Collier Company with owning the property and having custody of the cow in question the record is devoid of any proof of custody or control by Collier. At trial the plaintiffs never contended Collier had custody or control of the cow; rather they traveled on the theory that as owner of the land Collier was obligated to maintain the fences. Accordingly, there was no basis for submitting the case against the Collier Company to the jury and said defendant's motion for directed verdict should have been granted.
The complaint against W.D. Ranch was failure to maintain the fences so as to restrain cattle in its custody. During the trial W.D. Ranch offered evidence that Weiser and Freidheim carried insurance on the cattle on the property in order to show Weiser and Freidheim had control and custody. Plaintiffs objected to the admissibility of such evidence on the ground that they were not contending that W.D. Ranch had custody of the cattle but rather that W.D. Ranch had custody of the fences; that W.D. Ranch had an obligation to maintain the fences because there were cows on the property  not because W.D. Ranch had custody or control of the cattle. In closing argument plaintiffs contended that who owned the cattle was irrelevant; who had custody of the land was the vital question.
The evidence is clear that W.D. Ranch was a permittee or lessee under a written contract with the Collier Company. One paragraph of that contract provided that W.D. Ranch was to fence the outer boundaries of the land while another paragraph provided no fence was to be constructed without prior approval of the owner. During the period of time involved here W.D. Ranch did not graze cattle on the property. Its use of the property was for recreational purposes. W.D. Ranch allowed Weiser and Freidheim to graze cattle and required Weiser and Freidheim to maintain the fences. W.D. Ranch had no interest in the cattle Weiser and Freidheim grazed there nor did W.D. Ranch exercise any control over them. Therefore, W.D. Ranch had no liability to the plaintiffs, and the court should have granted its motion for a directed verdict.
Since we must reverse the judgment against both the Collier Company and W.D. Ranch we need not treat the appeal from the summary judgment against W.D. Ranch. That judgment will go for naught.
REVERSED.
BERANEK and WALDEN, JJ., concur.