944 So.2d 407 (2006)
FLORIDA POWER & LIGHT COMPANY, Appellant,
v.
James MORRIS, Appellee.
No. 4D04-4884.
District Court of Appeal of Florida, Fourth District.
October 18, 2006.
Rehearing Denied January 8, 2007.
*408 Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, and Cheryl A. Kempf of Florida Power & Light Company, Juno Beach, for appellant.
Patrice A. Talisman of Hersch & Talisman, P.A., Coconut Grove, and Feinstein & Sorota, P.A., Miami, for appellee.
STONE, J.
Florida Power and Light (FPL) appeals a personal injury judgment. The plaintiff, Morris, aggravated a knee injury while "shooing cows" that had wandered onto his property from adjacent property owned by FPL.
The cows were owned by Jose Ruiz who occupies the FPL property under a written license from FPL containing the following provisions:
4. Company's Rights: . . . Licensee's use of the Land shall always be subordinate to Company's rights in the Land. Company reserves the right to enter upon the Land at any time, for its purposes. . . . Company and its contractors will not be responsible or liable for any damage or loss to Licensee resulting from Company's use thereof for such purposes. Further, Company may at its discretion install or permit others to install upon the Land overhead or underground facilities.
5. Restrictions on Use: Licensee shall not use the Land in any manner which, in the opinion of Company, may tend to interfere with Company's use of the Land or may tend to cause a hazardous condition to exist. Specifically, Licensee shall not perform any excavation on the Land, except such excavation necessary for generally accepted agricultural practices, installing and maintaining an irrigation system, and for the construction and maintenance of fencing . . . without prior written permission of Company. Licensee shall keep the land clean and clear of debris so as to prevent it from becoming unsightly and shall not store materials and will see to it that no debris or trash is dumped or deposited thereon. Licensee shall drill no well on *409 the Land nor construct or erect any building, structure, fixture, shelter, attachment, or other improvement, whether the same be permanent or temporary, without prior written permission of Company in accordance with Company specifications.
7. Fencing: Fences may be installed on, over or across the Land upon obtaining prior written permission from Company, provided Licensee installs gates of adequate size to provide Company vehicles with ingress and egress to its facilities at all times. Such gates shall be provided at all locations where the fences cross Company patrol and finger roads and at all locations otherwise specified by Company. Fences and gates are to be grounded according to Company's specifications.
9. Compliance with Laws: Licensee agrees . . . to comply with all laws . . . for the purpose for which this license is granted and for the protection of the land.
The two properties are separated by a wire and post fence. There is no evidence that FPL was engaged in any active use of the property. At the time Ruiz took over the property, the fence was in good condition. Ruiz testified that the fence had been cut on several occasions since he put his cows on the land, allowing some to wander beyond the fence; each time, he fixed the fence at his own expense. Ruiz stated that it is his responsibility to keep the cows within the fenced area.
Meeker, of FPL's land management department, who negotiated the license for FPL, testified in deposition that, typically, the livestock licensee maintains the fence. However, another witness, a FPL real estate representative, testified that he did not know who bore the responsibility to maintain the fence. FPL real estate manager, Douglass, when asked in deposition who was responsible for the maintenance of the fence, stated, without further explanation or application to the facts of this case, "If the fence is our fence and it's on our land, not an easement, then it would be ours." We note, however, that Douglass' testimony was in response to a hypothetical Morris' counsel posed and is out of context. The witness testified in context, as follows:
Q: As you sit here today, as the project manager of FPL, who is responsible for the maintenance of the fencing on the property?
A: I don't know.
In an earlier appeal in this case, we reversed a trial court order that had dismissed Morris' case. The complaint alleged that both Ruiz and FPL had a duty to maintain the fence in a safe condition. The trial court had dismissed the complaint with prejudice on the ground that the complaint failed to state a cause of action against FPL, reasoning that a landowner that neither owned nor had control of livestock had no duty to erect or maintain a fence and no liability for injuries caused by the livestock. Morris v. Florida Power & Light Co., 753 So.2d 153 (Fla. 4th DCA 2000) (Morris I).
In Morris I, we concluded that "[a]lthough plaintiff may not ultimately be able to prove a case against FPL, his complaint should not have been dismissed with prejudice for failure to state a cause of action against FPL at this early juncture," because the terms of the license were not in their complaint. Id. at 154. We cited and discussed Bowen v. Holloway, 255 So.2d 696 (Fla. 4th DCA 1971), and Davidson v. Howard, 438 So.2d 899 (Fla. 4th DCA 1983), rev. denied, 450 So.2d 486 (Fla.1984), as the two cases primarily relied on by the parties, and stated:

*410 We conclude that the trial court's dismissal as to FPL was premature in light of the fact that the terms of the agreement between Ruiz and FPL are not, so far as this record shows, known. If there were an agreement, and if the agreement required Ruiz to maintain the fence and not FPL, FPL would not be liable according to Davidson. The complaint does allege that Ruiz complained to FPL that the fence was in disrepair, which suggests that FPL may have agreed that it would maintain the fence. If FPL did, it may be liable.
Id. at 154-55 (emphasis added).
Essentially, Morris I applied this court's Davidson opinion adversely to Morris, but recognized that FPL could be found liable if it had agreed to maintain the fence. Following our remand, Morris filed an amended complaint, adding a count of nuisance against FPL. The case went to trial and the jury found both FPL and Ruiz liable. The court denied FPL's motions for directed verdict and new trial.
The question of whether a defendant in a negligence action owes a duty to the plaintiff is one of law. Robert-Blier v. Statewide Enter., Inc., 890 So.2d 522, 523 (Fla. 4th DCA 2005).
Morris asserts that the law of general premises liability with respect to a landowner's duty applies:[1]
Although a landowner will not be responsible for injuries caused solely by the lessee's actions, the owner may be liable to a third party if, under the terms of the lease, he retains responsibility for maintenance and inspection, or where if the owner retains a possessory interest in the property. Thus, it is not ownership of the property which determines the duty of care, but rather, the failure of a person who is in actual possession and control (be it the owner, an agent, a lessee, a construction contractor, or other possessor with authority or control), to use due care to warn or to exclude, licensees and invitees from areas known to the possessor to be dangerous because of operations or activities or conditions.
Worth v. Eugene Gentile Builders, 697 So.2d 945, 947 (Fla. 4th DCA 1997) (internal citations omitted). Generally, control and responsibility are issues of fact to be resolved by the jury. Thompson v. Gallo, 680 So.2d 441, 443 (Fla. 1st DCA 1996) (citation omitted).
A landlord's duty in livestock fencing cases, rather than focusing on a foreseeable zone of risk analysis, is governed by what FPL deems a "unique set of statutory and common law rules establishing legal duties." In Davidson, the plaintiff was killed when his truck hit a cow. 438 So.2d at 900. The cow was owned by Weiser and Freidheim, Inc. Id. The Collier Company, who owned the land upon which the cow was grazing, had leased the property to W.D. Ranch for grazing purposes; W.D. Ranch allowed Weiser and Freidheim, Inc. to graze cattle on the property. Id. Under the lease agreement, Weiser and Freidheim, Inc. were to maintain the fences around the property; in addition to Weiser and Freidheim's cattle grazing, W.D. Ranch also used the property for recreational purposes. Id.
The plaintiff brought suit against Collier, W.D. Ranch, and Weiser and Freidheim, Inc. In Davidson, we said:

*411 During the trial the parties were primarily concerned with applicability of Chapter 588, Florida Statutes (1975). A portion of this chapter, Sections 588.12-588.26 (Chapter 25236, Laws of Florida (1949)), is known as the Warren Act whereby the legislature in 1949 declared it necessary to have a statewide uniform livestock act embracing all public roads. § 588.12, Fla. Stat. It was the purpose of the act to place a duty upon all owners of livestock to prevent their stock from running at large or straying upon the public roads of this state. § 588.14, Fla. Stat. If an owner of livestock either willfully, intentionally, carelessly, or negligently allowed his stock to run at large or stray upon public roads he became liable for any damage to persons or property. § 588.15, Fla. Stat. The act defines an "owner" of livestock as any person "owning or having custody of or in charge of livestock." § 588.13(2), Fla. Stat.
Confusion has prevailed in this case because the plaintiffs have proceeded upon the theory that Section 588.11, Florida Statutes (Chapter 25357, § 7, Laws of Florida (1949)), which reads as follows:
The owner of legally enclosed land shall maintain in reasonable good condition the fence or enclosure around such land and shall maintain in legible condition any and all posted notices as required by §§ 588.09, 588.10, but a substantial or reasonably effective compliance with the provisions of §§ 588.011, 588.09, 588.10, disregarding minor or inconsequential differences, in the size, shape, or condition thereof, shall be sufficient for the purpose of evidencing the legal enclosure of said land.
requires all owners of land to fence their property. Thus, the plaintiffs contended throughout that the Collier Company as the owner of the land had a continuing duty to maintain adequate fencing on the property though the Collier Company neither owned nor had custody or control of any livestock on said property. We hold that is an improper construction of Section 588.11 and is a misunderstanding of the Warren Act. The latter imposes a duty not on land owners but on owners of livestock. They are enjoined to keep their livestock off the public roads whether by fence or wall or simple tether, it matters not.
* * *
All Section 588.11 does (or rather did at the time it was passed) is to impose a conditional legal duty upon a landowner to maintain legal fences and legal signs around his land if that land is to have the protection of criminal trespass statutes.
* * *
Thus, we conclude that the liability plaintiffs seek to impose must be visited upon the owner of the cow in question as defined by Section 588.13, viz., the legal owner or the person having custody of or in charge of the animal, and not the person who is merely the legal owner of the land on which the cow was grazing.
Although the complaint herein charged the Collier Company with owning the property and having custody of the cow in question the record is devoid of any proof of custody or control by Collier. At trial the plaintiffs never contended Collier had custody or control of the cow; rather they traveled on the theory that as the owner of the land Collier was obligated to maintain the fences. Accordingly, there was no basis for submitting the case against the Collier Company to the jury and said defendant's *412 motion for directed verdict should have been granted.
* * *
The evidence is clear that W.D. Ranch was a permittee or lessee under a written contract with the Collier Company. One paragraph of that contract provided that W.D. Ranch was to fence the outer boundaries of the land while another paragraph provided no fence was to be constructed without prior approval of the owner. During the period of time involved here W.D. Ranch did not graze cattle on the property. Its use of the property was for recreational purposes. W.D. Ranch allowed Weiser and Freidheim to graze cattle and required Weiser and Freidheim to maintain the fences. W.D. Ranch had no interest in the cattle Weiser and Freidheim grazed there nor did W.D. Ranch exercise any control over them. Therefore, W.D. Ranch had no liability to the plaintiffs, and the court should have granted its motion for directed verdict.
Id.[2] at 901-02.
Davidson was cited favorably in Rotolante v. Dasilva, 460 So.2d 560, 561 (Fla. 3d DCA 1984), holding,
The appellant is the owner of real property upon which her lessee operates a boarding stable for horses, and from which a horse which was neither owned nor controlled by the appellant wandered onto a public road causing damage to the appellee. The judgment against the appellant is reversed with directions to enter judgment in her favor upon a holding that the owner of land, who neither owns nor has custody or control of any livestock on the property, has no duty to erect or maintain a fence upon the land.
Morris tries to distinguish Davidson on the basis that the lessee in Davidson used the land for recreational purposes, not grazing, and the lease there more explicitly imposed the obligation to provide fencing on the lessee. However, Morris misreads Davidson. The lease between Collier and W.D. Ranch provided in one paragraph that W.D. Ranch was to fence the outer boundaries. In another paragraph, the lease provided that no fence could be installed without Collier's approval. W.D. Ranch allowed Weiser and Freidheim to graze cattle on the property. Weiser and Freidheim agreed to maintain the fences on the property.
In Davidson, this court held that Collier had no duty to erect or maintain a fence, as that duty belonged to Weiser and Freidheim, the owner or custodian of the cows. Despite the fence-related lease provisions between Collier and W.D. Ranch, this court also reversed the judgment as to W.D. Ranch, who had no interest in the cows and was not grazing the cows on the property.
We note that Davidson is also consistent with the law in other states. See, e.g., Supchak v. Pruitt, 232 Ga.App. 680, 503 S.E.2d 581, 584 (1998) (stating, "If the landowner is neither the owner nor keeper, he has no duty to confine or restrain the animal. If an animal is allowed by its keeper to escape from its confinement and harm results, that damage results from negligent confinement, not from the condition of the land. To the extent that the condition of the land made it inadequate or *413 unsuitable for confinement, the responsibility for selecting an adequate method of confinement is upon the keeper, not upon the landowner who neither owned nor kept the animal."); Evancho v. Baker, 196 Ga. App. 903, 397 S.E.2d 166 (1990) (citing Rotolante, 460 So.2d at 560) (holding that a common law negligence theory against the landowner has no merit); Heyen v. Willis, 94 Ill.App.2d 290, 236 N.E.2d 580, 584 (1968) (refusing to recognize a common law duty of the landowner in livestock-at-large cases, and stating that "[t]he likelihood of injury or damage from estrays, and the attendant duty to use care to prevent such injury or damage, lies not in the place where animals may be kept but in their propensity to roam, their wanderlust").
In any event, we need not resolve here whether Davidson is controlling, as that issue was resolved in Morris I, in which we recognized that FPL had no liability in this case absent its assuming such in the written document. This conclusion established the law of the case and precluded any argument on remand that premises liability concepts imposed a duty on FPL. See Pinnock v. Sugar Cane Growers Coop. of Fla., 791 So.2d 1135, 1137 (Fla. 4th DCA 2001) (holding appellate court's prior decision in case forecloses reconsideration by trial court on same operative facts); see also Schultz v. Schickedanz, 884 So.2d 422 (Fla. 4th DCA 2004); Dicks ex rel. Montgomery v. Jenne, 740 So.2d 576 (Fla. 4th DCA 1999). We also reject Morris' contention that the law of the case doctrine does not apply where the complaint is dismissed, the dismissal reversed, and a subsequent trial is had. The law of the case barred Morris from re-asserting the same causes of action previously dismissed and ruled upon in the prior appeal. See Wells Fargo Armored Servs. Corp. v. Sunshine Sec. & Detective Agency, Inc., 575 So.2d 179, 180 (Fla.1991).
The written "license" is now before the court and its terms do not impose a duty upon FPL to construct, repair, or maintain the fence. Further, at trial, Morris failed to establish that FPL assumed a contractual duty to repair the fence. To the contrary, all of the evidence as to the FPL/Ruiz license is that Ruiz had the duty to maintain the fence. Nothing in the license shifts this duty to FPL, and Douglass' testimony does not change the plain language of the license. Absent evidence of FPL assuming this obligation, Morris could not prove a prima facie case against FPL.
It was Ruiz's obligation to control his cows. Ruiz expressly agreed in paragraph 9 of the license "to comply with all laws . . . for the purpose of which this License is granted and for the protection of the Land." Consistent with the purpose of the license, the agricultural license allowed Ruiz to install a fence. The presence of an existing fence surrounding the property did not impose a duty on FPL to maintain it. It simply meant Ruiz did not have to install a fence which he was entitled to do under the terms of the license. As Ruiz admitted, it was his responsibility to keep the cows within the fenced area.
Morris' additional contention that FPL's having a right to enter the premises created a duty to third parties is incorrect. Indeed, this court effectively so held in its prior opinion in this case. See Morris I, 753 So.2d at 154-55. Further, even premises liability principles recognize that a landlord's right to enter the premises does not, itself, constitute control of the premises so as to impose a duty on the landlord to protect third parties. See Narvaez v. Pestana, 780 So.2d 267, 268 (Fla. 4th DCA 2001) (finding right to enter does not create duty to protect tenant's patrons from acts of third parties). This is because a landowner is not, by that status alone, *414 responsible for injuries caused solely by a lessee's operations and activities. See City of St. Petersburg v. Competition Sails, Inc., 449 So.2d 852, 853-54 (Fla. 2d DCA 1984); Bovis v. 7-Eleven, Inc., 505 So.2d 661, 663-64 (Fla. 5th DCA 1987).
We have considered Bowen, relied on by Morris, and deem it inapplicable. In Bowen, we reversed a summary judgment in favor of the owner/operator of a stable in which stalls were individually leased to horse owners. 255 So.2d at 697. A horse escaped from a stall with a broken latch and wandered onto a road via an unfenced section of the property, causing an accident. Id. In that case, there was no question that the landowner was active in operating the facilities. No consideration was given in that opinion to Warren Act issues and, in any event, in Bowen, the landowner was also in control of the premises.[3]
Therefore, we reverse the final judgment against FPL.
MAY, J., concurs.
FARMER, J., dissents with opinion.
FARMER, J., dissenting.
In the previous appeal in this case, we reviewed a dismissal in favor of FPL.[4] In that decision we confronted two precedents. Plaintiff argued that under Bowen v. Holloway, 255 So.2d 696 (Fla. 4th DCA 1971), he had a good cause of action against FPL as the owner of the land. FPL contended that under Davidson v. Howard, 438 So.2d 899 (Fla. 4th DCA 1983), it was entitled to judgment because any liability for straying cattle was on the licensee. In harmonizing these authorities to the issues in the case, we reversed the judgment and explained:
"We conclude that the trial court's dismissal as to FPL was premature in light of the fact that the terms of the agreement between [licensee] and FPL are not, so far as this record shows, known. If there were an agreement, and if the agreement required [licensee] to maintain the fence and not FPL, FPL would not be liable according to Davidson. The complaint does allege that [licensee] complained to FPL that the fence was in disrepair, which suggests that FPL may have agreed that it would maintain the fence. If FPL did, it may be liable."
"Because it is not clear from the facts alleged in the complaint that the plaintiff `could prove no set of facts' in support of his claim, the complaint should not have been dismissed with prejudice. Although we do not agree with plaintiff that this complaint establishes that FPL breached a duty, we do agree with plaintiff that he should be allowed to amend."
753 So.2d at 154-55. It is rather plain that our holding was that plaintiff could prove a cause of action satisfying both Bowen and Davidson if he showed that under their agreement FPL remained in control of the land and the licensee was not required to maintain the fences.
Well, now we know what the license says. It does not in any sense require the licensee to maintain the fences previously built and maintained by FPL. In fact it is utterly silent on that point. It does provide that the licensee may install new *415 fences, but if he does so, he should provide gates for FPL to enter with its trucks and equipment "at all times." Obviously the license did not shift any duty as to the existing fences by requiring the licensee to maintain them, as under a true lease.
Nor does the license require FPL to give up any of its plenary rights of control as owner of the property. By the "always be subordinate" language in the license, FPL forever retained its consummate rights of ownership. The license did not purport to relieve FPL of its owner's duty to maintain its property. Nothing in the license barred it from stepping in at any time if its fences need mending.[5] As FPL's manager for real estate testified, "if the fence is our fence and it's on our land, not an easement, then it would be ours." Because FPL's exclusive right of control of the land was never transferred to anyone under the license, there is no reason to inquire whether FPL might have later assumed such rights of ownership. It could not newly take on responsibility for that which it was already responsible.
The licensee is not a tenant exclusively occupying FPL's land under a lease agreement. He is just a licensee, with but a restricted, revocable, non-exclusive, specific right of a defined use on the land owned by FPL.[6] He does not have a general right to occupy FPL's land. His presence there is not at all sole and exclusive, as a tenant's would be. In the plain words of their agreement, this licensee's use "shall always be subordinate to [FPL's] rights in the Land." Even if it were true, it would not matter that FPL has not "engaged in any active use of the property" because it has always kept the principal right to do so. Cattle or horses, four-legged creatures or two, any nuisance emanating from its land is controllable by FPL "at all times."
It is said that our prior opinion governs this appeal. I agree. FPL argues under the law of the case doctrine that one of the two precedents discussed in our opinion  Davidson  requires a reversal. I disagree.
The law of the case doctrine has different but limited effects. Our supreme court long ago explained that:
"`While undoubtedly an affirmance of a judgment is to be considered an adjudication by the appellate court that none of the claims of error are well founded  even though all are not specifically referred to in the opinion  yet no such conclusion follows in case of a reversal. It is impossible to foretell what shape the second trial may take, or what questions may then be presented. Hence the rule is that a judgment of reversal is not necessarily an adjudication by the appellate court of any other than the questions in terms discussed and decided. An actual decision of any question *416 settles the law in respect thereto for future action in the case.'"
Fla. East Coast Ry. Co. v. Geiger, 66 Fla. 582, 64 So. 238, 240 (1914) (quoting Mutual Life Ins. Co. v. Hill, 193 U.S. 551, 553, 24 S.Ct. 538, 48 L.Ed. 788 (1904)); see also Sax Enterprises v. David & Dash Inc., 107 So.2d 612, 613 (Fla.1958) ("A judgment of reversal is not necessarily an adjudication by the appellate court of any other than the questions in terms discussed and decided; [c.o.] if, however, a particular holding is implicit in the decision rendered, then it is no longer open for discussion or consideration."). More recently, the supreme court stressed that even with affirmances, the law of the case doctrine is confined to "rulings on questions of law actually presented and considered [e.o.] on a former appeal." Fla. Dep't of Trans. v. Juliano, 801 So.2d 101, 106 (Fla.2001); U.S. Concrete Pipe v. Bould, 437 So.2d 1061, 1063 (Fla.1983). In the words of Wells Fargo Armored Services Corporation v. Sunshine Security and Detective Agency Inc., 575 So.2d 179, 180 (Fla.1991): "the law-of-the-case doctrine was meant to apply to matters litigated to finality, not to matters that remain essentially unresolved due to the erroneous ruling of a lower court."
Juliano holds that the prior decision is binding "as long as the facts on which such decision [is] based continue to be the facts of the case." 801 So.2d at 106. The facts in our prior decision were that the agreement would control the issue. Our decision necessarily upheld liability under both Bowen and Davidson if the proof showed that FPL remained in control of the premises. By the terms of the license, FPL remained in control of the premises. Under Bowen and Davidson the landowner is liable under the facts of this case. To hold otherwise on this appeal is itself to violate the law of the case doctrine.
The previous appeal resulted in a reversal. The only thing decided was that it was possible under both Bowen and Davidson for plaintiff to have a cause of action against FPL if the license did not shift the duty of maintaining fences to the licensee. Manifestly the language of their agreement had no such effect, so our previous decision is no bar to FPL's liability under the judgment now being reviewed.
NOTES
[1] Although there are differences between a lease and a license, we can discern no basis to treat the obligations of a landowner to insured third parties differently depending upon whether the document in this case is termed a "lease" or a "license." Morris has also urged that we analogize the liability of a lessor to the liability of a licensor.
[2] The statutory sections noted remain in force today, with the exception of section 588.14. Section 588.15 now provides "[e]very owner of livestock who intentionally, willfully, carelessly, or negligently suffers or permits such livestock to run at large upon or stray upon the public roads of this state shall be liable in damages for all injury and property damage sustained by any person by reason thereof."
[3] Accordingly, as we find Bowen to be inapplicable to the facts of this case, we reject Morris' contention that the trial court properly denied the motion for directed verdict as to the nuisance count. It would be legally inconsistent to hold FPL liable for nuisance for failure to erect or maintain a fence, where there was no statutory or contractual duty to do so.
[4] Morris v. Florida Power & Light, 753 So.2d 153 (Fla. 4th DCA 2000).
[5] From the evidence at trial, it appears that FPL is not very good at mending its fences.
[6] The limited function of a license to go upon realty has been long recognized in Florida and remains important:

"An easement is chiefly distinguished from a license in that an easement implies an interest in land, which ordinarily is created by a grant and is often permanent, whereas a license does not imply an interest in land, but is simply a personal, unassignable, and ordinarily revocable privilege or permit to do something on the land of another."
20 FLA. JUR. 2d, Easements and Licenses in Real Property, § 3. A license is therefore distinguished from those consensual transfers that do convey an interest in land. See Dance v. Tatum, 629 So.2d 127 (Fla.1993) (reversing where court's holding obliterated distinction between an easement, which runs with the land, and a license, which "may generally be revoked at the pleasure of the grantor").